## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| **IN RE: HILL'S PET NUTRITION, INC. DOG FOOD PRODUCTS LIABILITY LITIGATION**<br><br>**This Document Relates to All Cases, Except:**<br><br>***Diana Anja Eichorn-Burkhard v. Hill's Pet Nutrition, Inc. et al.*, Case No. 19-CV-02672- JAR-TJJ;**<br><br>**and**<br><br>***Bone, et al. v. Hill's Pet Nutrition, Inc., et al.*, Case No. 19-CV-02284- JAR-TJJ (cat food-related claims only. This complaint DOES apply to all dog food-related claims in the *Bone* complaint).** | MDL No. 2887<br><br>Case No. 2:19-md-02887-JAR-TJJ |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, PROVISIONAL CERTIFICATION OF SETTLEMENT CLASS, APPOINTMENT OF SETTLEMENT CLASS COUNSEL AND CLASS REPRESENTATIVES, APPROVAL TO DISSEMINATE CLASS NOTICE, APPOINTMENT OF THE SETTLEMENT ADMINISTRATOR, AND ADOPTION OF A SCHEDULE FOR THE FINAL APPROVAL PROCESS**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ 3

INTRODUCTION .............................................................................................................. 7

FACTUAL AND PROCEDURAL HISTORY ..................................................................... 8

I.      Summary of Plaintiffs' Claims ............................................................................... 8

II.     Procedural History ................................................................................................ 11

THE TERMS OF THE PROPOSED SETTLEMENT ....................................................... 14

I.      Defendants Agree to Settlement Class Certification for Settlement Purposes Only ........ 15

II.     The Settlement Provides Substantial Monetary Relief for the Settlement Class.............. 15

III.    Service Awards to the Class Representatives Will Be Paid from the Settlement
        Fund ...................................................................................................................... 18

IV.     Attorneys' Fees and Litigation Costs and Expenses Will Be Paid from the
        Settlement Fund .................................................................................................... 19

ARGUMENT .................................................................................................................... 19

I.      The Settlement Readily Meets the Standards for Preliminary Approval........................ 19

        A.      The Class Representatives and Settlement Class Counsel Have Adequately
                Represented the Settlement Class ......................................................... 21

        B.      The Settlement Was Fairly, Honestly, and Extensively Negotiated.................... 22

        C.      The Relief That the Settlement Agreement Provides for the Settlement
                Class Is Adequate.................................................................................. 23

                1.      The Costs, Risks, and Delay of Trial and Appeal.................................... 23

                2.      The Effectiveness of the Proposed Method for Distributing Relief
                        to the Settlement Class, Including the Method of Processing
                        Settlement Class Members' Claims.......................................................... 26

                3.      The Terms of the Proposed Award of Attorney's Fees and
                        Expenses and Service Awards ................................................................ 26

                4.      The Parties Have No Additional Agreement Other Than an
                        Agreement to Address Requests for Exclusion ........................................ 28

        D.      The Settlement Agreement Treats Settlement Class Members Equitably

Relative to Each Other ........................................................................ 28

E.  Counsel Genuinely Believe the Settlement Agreement Is Fair and Reasonable ........................................................................ 28

II.  The Court Should Preliminarily Certify the Settlement Class and State Subclasses and Appoint Settlement Class Counsel ............................................................ 29

A.  The Settlement Class and State Subclasses Satisfy All Requirements of Rule 23(a) ........................................................................ 31

1.  The Settlement Class and State Subclasses Are Sufficiently Numerous ........................................................................ 31

2.  There Are Questions of Law and Fact Common to the Settlement Class and the State Subclasses ................................................ 31

3.  Plaintiffs' Claims Are Typical of the Claims of the Settlement Class and the State Subclasses ................................................ 32

4.  Plaintiffs and Settlement Class Counsel Fairly and Adequately Protect the Interests of the Settlement Class and the State Subclasses ........................................................................ 33

B.  The Settlement Class and the State Subclasses Satisfy All Requirements of Federal Rule of Civil Procedure 23(b)(3) ........................................... 34

1.  Common Legal and Factual Questions Predominate ............................. 34

2.  A Class Action Is the Superior Method to Adjudicate Plaintiffs' Claims ........................................................................ 35

III.  The Court Should Approve the Form and Content of the Proposed Notice to the Settlement Class and State Subclasses ................................................ 36

PROPOSED SCHEDULE FOR FINAL APPROVAL PROCEEDINGS .................................. 39

CONCLUSION ........................................................................ 40

# **TABLE OF AUTHORITIES**

### CASES

*Adamson v. Bowen*,
   855 F.2d 668 (10th Cir. 1988) ................................................ 26

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................ 24, 27, 28

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
   133 S. Ct. 1184 (2013) ................................................ 28

*Barnwell v. Corr. Corp. of Am.*,
   No. 2:08-02151-JWL-DJW, slip op. (D. Kan. Feb. 12, 2009) ................................ 20

*Belote v. Rivet Software, Inc.*,
   No. 12-cv-02792-WYD-MJW, 2014 WL 3906205 (D. Colo. Aug. 11, 2014) ........................ 19

*Carpenters & Joiners Welfare Fund, Universal Care Inc. v. SmithKline Beecham Corp*,
   No. CV 04-3500 MJD/SRN, 2008 WL 4435734 (D. Minn. Sept. 30, 2008) ......................... 30

*Chatelain v. Prudential-Bache Sec., Inc.*,
   805 F. Supp. 209 (S.D.N.Y. 1992) ......................................... 18

*Chavez Rodriguez v. Hermes Landscaping, Inc.*,
   No. 17-2142-JWB-KGG, 2020 WL 3288059 (D. Kan. June 18, 2020) ........................... passim

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013) ................................................ 24

*Cook v. Niedert*,
   142 F.3d 1004 (7th Cir. 1998) ................................................ 21

*DeJulius v. New England Health Care Employees Pension Fund*,
   429 F.3d 935 (10th Cir. 2005) ................................................ 29

*Devlin v. Scardelletti*,
   536 U.S. 1 (2002) ................................................ 14

*DG ex rel. Stricklin v. Devaughn*,
   594 F.3d 1188 (10th Cir. 2010) ................................................ 25

*Emig v. Am. Tobacco Co.*,
   184 F.R.D. 379 (D. Kan. 1998) ................................................ 27

*Flerlage v. US Foods, Inc.*,
   No. 18-cv-02614-DDC-TJJ, 2020 WL 4673155 (D. Kan. Aug. 12, 2020) ......................... 30

*Garcia v. Tyson Foods, Inc.*,
   255 F.R.D. 678 (D. Kan. 2009) ............................................................. 26

*Gottlieb v. Wiles*,
   11 F.3d 1004 (10th Cir. 1993) ............................................................. 14

*Hapka v. CareCentrix, Inc.*,
   No. 2:16-cv-02372-KGG, 2018 WL 1871449 (D. Kan. Feb. 15, 2018)................................. 22

*Harris v. Chevron U.S.A., Inc.*,
   No. 15-cv-0094-PRW, 2019 WL 5846917 (W.D. Okla. July 29, 2019) ................................. 16

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
   689 F.3d 229 (2d Cir. 2012) ............................................................. 29

*In re Checking Account Overdraft Litig.*,
   830 F. Supp. 2d 1330 (S.D. Fla. 2011) ................................................... 17

*In re Crocs, Inc. Sec. Litig.*,
   306 F.R.D. 672 (D. Colo. 2014) ................................................... 22, 32

*In re Dep't of Energy Stripper Well Exemption Litig.*,
   653 F. Supp. 108 (D. Kan. 1986)................................................... 18

*In re Hill's Pet Nutrition, Inc., Dog Food Prod. Liab. Litig.*,
   382 F. Supp. 3d 1350 (J.P.M.L. 2019)..................................................... 5

*In re King Res. Co. Sec. Litig.*,
   420 F. Supp. 610 (D. Colo. 1976)................................................... 17

*In re Motor Fuel Temperature Sales Practices Litig.*,
   258 F.R.D. 671 (D. Kan. 2009) ............................................................. 13

*In re Samsung Top-load Washing Mach. Mktg., Sales Practices & Prod. Liab. Litig.*,
   No. 17-ML-2792-D, 2020 WL 2616711 (W.D. Okla. May 22, 2020) .................................... 15

*In re Syngenta AG MIR162 Corn Litig.*,
   No. 14-md-02591-JWL, 2018 WL 1726345 (D. Kan. Apr. 10, 2018) .................................... 14

*In re Universal Serv. Fund Tel. Billing Practices Litig.*,
   No. 02-MD-1468-JWL, 2011 WL 1808038 (D. Kan. May 12, 2011)................................... 20

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
   396 F.3d 922 (8th Cir. 2005) ............................................................. 18

*Jones v. Nuclear Pharmacy, Inc.*,
   741 F.2d 322 (10th Cir. 1984) ............................................................. 14

*Marcus v. Kan. Dep't of Revenue*,
　206 F.R.D. 509 (D. Kan. 2002) ............................................................................... 27

*Marcus v. State of Kansas, Dep't of Revenue*,
　209 F. Supp. 2d 1179 (D. Kan. 2002)................................................... 16, 22, 23, 34

*McNeely v. Nat'l Mobile Health Care, LLC*,
　No. CIV-07-933-M, 2008 WL 4816510 (W.D. Okla. Oct. 27, 2008) ...................... 32

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
　339 U.S. 306 (1950)................................................................................................. 30

*Murray v. Tips, Inc.*,
　No. 18-cv-00937-RM-KLM, 2020 WL 1852382 (D. Colo. Apr. 13, 2020)...................... 15, 16

*Nakamura v. Wells Fargo Bank, N.A.*,
　No. 17-4029-DDC-GEB, 2019 WL 2185081 (D. Kan. May 21, 2019) ................... 20

*Naylor Farms, Inc. v. Chaparral Energy, LLC*,
　923 F.3d 779 (10th Cir. 2019) ................................................................................. 28

*Nieberding v. Barrette Outdoor Living, Inc.*,
　No. 12-cv-2353-DDC-TJJ, 2015 WL 1645798 (D. Kan. Apr. 14, 2015)................ 13

*O'Dowd v. Anthem, Inc.*,
　No. 14-cv-02787-KLM-NYW, 2019 WL 4279123 (D. Colo. Sept. 9, 2019) ........... 22

*Pinkston v. Wheatland Enters., Inc.*,
　No. 11-cv-2498-JAR, 2013 WL 1302053 (D. Kan. Mar. 27, 2013)........................ 25

*Robinson v. Gillespie*,
　219 F.R.D. 179 (D. Kan. 2003) ............................................................................... 27

*Ruckelshaus v. Sierra Club*,
　463 U.S. 680 (1983).................................................................................................. 26

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
　314 F.3d 1180 (10th Cir. 2002) ......................................................... 14, 16, 17, 27

*Shahlai v. Comcast Cable Commc'ns Mgmt., LLC*,
　No. 16-cv-02556-WJM-NRN, 2020 WL 3577395 (D. Colo. July 1, 2020) ............ 21

*Sibley v. Sprint Nextel Corp.*,
　315 F.R.D. 642 (D. Kan. 2016) ............................................................................... 24

*Stambaugh v. Kan. Dep't of Corr.*,
　151 F.R.D. 664 (D. Kan. 1993) ............................................................................... 26

*Sullivan v. DB Investments, Inc.*,
   667 F.3d 273 (3d Cir. 2011) ................................................................................ 28

*Swartz v. D-J Eng'g, Inc.*,
   No. 12-cv-01029-DDC-KGG, 2016 WL 633872 (D. Kan. Feb. 17, 2016) .............................. 19

*Taylor v. Safeway Stores, Inc.*,
   524 F.2d 263 (10th Cir. 1975) ............................................................................ 26

*Tennille v. W. Union Co.*,
   785 F.3d 422 (10th Cir. 2015) ....................................................................... 14, 30

*Tennille v. W. Union Co.*,
   No. 09-cv-00938-JLK-KMT, 2014 WL 5394624 (D. Colo. Oct. 15, 2014) .......................... 19

*Trevino v. Adams*,
   455 F.3d. 1155 (10th Cir. 2006) .......................................................................... 25

*Tripp v. Berman & Rabin, P.A.*,
   310 F.R.D. 499 (D. Kan. 2015) ....................................................................... 27, 29

*Tripp v. Rabin*,
   No. 14-cv-2646-DDC-GEB, 2016 WL 3615572 (D. Kan. July 6, 2016) ............................ 16

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) ................................................................................... 28

*Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*,
   725 F.3d 1213 (10th Cir. 2013) ........................................................................... 25

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .................................................................................. 25, 26

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ............................................................................. 25

**S<small>TATUTES</small>**

28 U.S.C. § 1407 .............................................................................................. 5

**O<small>THER</small> A<small>UTHORITIES</small>**

21 C.F.R. § 507.33 ............................................................................................ 5

William B. Rubenstein, 5 Newberg on Class Actions § 17:1 (5th ed. 2020) .............................. 21

## **INTRODUCTION**

Plaintiffs[1] allege that certain varieties of Hill's Prescription Diet and Science Diet canned dog food products were defective and were deceptively labeled with respect to their safety, nutritiousness, and quality because they contained dangerously high levels of vitamin D or otherwise did not contain the level of vitamin D that was warranted. Excessive vitamin D intake can cause dogs to experience serious health issues and even death. The Settlement Agreement that Plaintiffs now submit for preliminary approval provides excellent relief for the Settlement Class Members and is the achievement of months of vigorous arm's-length negotiation with the guidance of an experienced mediator.

After more than a year of settlement negotiations, the Parties agreed on a Settlement that requires Defendants to establish a non-reversionary Settlement Fund of $12.5 million and allows eligible Settlement Class Members to make both (i) Dog Injury Claims for documented damages incurred related to their dog's ingestion of excess vitamin D through the consumption of the Hill's Products and (ii) Consumer Food Purchase Claims for reimbursement of costs associated with the purchase of the Hill's Products, with or without Proof of Purchase.

The Parties reached this Settlement after conducting significant settlement-related discovery and engaging in extensive arm's-length negotiations, including two separate day-long in-person mediation sessions with Honorable Wayne R. Andersen (Ret.) and numerous subsequent communications between each Party and Judge Andersen, amounting to more than a year of settlement negotiations. The Settlement is an excellent result because it provides the Settlement Class with multiple forms of meaningful monetary relief, while taking into account the substantial

---

[1] Capitalized terms shall have the meaning that the Class Settlement Agreement ascribes to them. *See generally* Class Settlement Agreement (filed as Exhibit A).

7

risks the Parties would face if the litigation progressed. Accordingly, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement so notice can be provided to the members of the Settlement Class, and that the Court schedule a Final Approval Hearing to consider final approval of the Settlement. *See* FED. R. CIV. P. 23(e).

Plaintiffs also respectfully request that the Court appoint them as Class Representatives for the Settlement Class and appoint Co-Lead Counsel as Settlement Class Counsel. *See* FED. R. CIV. P. 23(g). The Court should also approve the robust Notice Program the Parties agreed to in the Settlement, as it meets the requirements of due process and is the best notice practicable under the circumstances. *See* FED. R. CIV. P. 23(c).

## FACTUAL AND PROCEDURAL HISTORY

### I.      Summary of Plaintiffs' Claims

Hill's Pet Nutrition, Inc. and Hill's Pet Nutrition Sales, Inc., are leading North American producers of pet food products sold nationwide by retailers, veterinarians, and veterinary clinics, including the Hill's "Prescription Diet" and "Science Diet" brand canned dog foods listed in Exhibit 1 to the Settlement Agreement, which is filed as Exhibit A. Colgate-Palmolive Company is the parent company of Hill's. Plaintiffs allege Colgate takes an active role in the development, distribution, and marketing of Hill's pet foods and derives profit from their sales.

Plaintiffs allege Defendants hold themselves out to the public as producing safe, nutritious, and high-quality pet food and make numerous representations about the quality of the Hill's Products and their manufacturing facilities and processes. For example, Plaintiffs allege Defendants promote and price the Hill's Products as "premium" dog food by, among other things, uniformly labeling the Science Diet products as "VETERINARIAN RECOMMENDED" and the Prescription Diet products as providing "CLINICAL NUTRITION" and "THERAPEUTIC DOG

NUTRITION." The product labels further represent that the dog food "provides complete and balanced nutrition for maintenance of adult dogs and growing puppies." Because of these quality promises, consumers are willing to pay a premium price for the Hill's Products.

Plaintiffs allege that despite these representations, the Hill's Products contained excessive amounts of vitamin D, intake of which poses serious health risks to dogs[2] and even death. Vitamin D toxicity is a medical emergency that requires immediate treatment and hospitalization, and treating dogs with vitamin D toxicity is an expensive and laborious process often involving prolonged hospitalization. As a result of the excess vitamin D or vitamin D not as warranted in the Hill's Products, Plaintiffs allege that dog owners across the country lost money by purchasing Hill's Products that were not as represented and/or expressly warranted and incurred additional costs associated with replacing the defective Hill's Products. Furthermore, Plaintiffs allege that dog owners across the country incurred damages when their dogs fell ill or died, including substantial costs associated with obtaining veterinarian services and treatment. Defendants dispute the scope of harm allegedly caused by the affected foods, and take the position that the majority of pet owners who believed their pets were injured have already been compensated for any injuries through Hill's claims process.

On January 31, 2019, Hill's announced a recall of certain batches of Hill's Prescription Diet and Science Diet canned dog food products due to excessive quantities of vitamin D.[3] In so

---

[2] These risks include vomiting, weakness, depression, loss of appetite, increased thirst (polydipsia), increased urination (polyuria), dark tarry feces containing blood, blood in vomit, loss of weight, constipation, seizures, muscle tremors, abdominal pain, excessive drooling, and joint issues. Consolidated Compl. ¶ 110.

[3] U.S. FOOD & DRUG ADMIN., *Hill's Pet Nutrition Voluntarily Recalls Select Canned Dog Food for Excessive Vitamin D* (Jan. 31, 2019), https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/hills-pet-nutrition-voluntarily-recalls-select-canned-dog-food-excessive-vitamin-d.

doing, Hill's acknowledged its testing of the food "confirmed elevated levels of vitamin D due to a supplier error."[4] Hill's expanded the recall on March 20, 2019,[5] and again on May 20, 2019.[6]

Immediately following the date of the original recall, the FDA conducted an inspection of Hill's manufacturing facility in Topeka. On February 19, 2019, the FDA issued an FDA Form 483[7] to Hill's, which listed the FDA's observations from the inspection, including that Hill's "did not implement preventive controls to ensure that any hazards requiring a preventive control are significantly minimized or prevented."[8] Even though the vitamin premix contained ingredients that Hill's had identified as "high risk chemical hazard[s]," Hill's had not done any analytical testing on the vitamin premix.[9] On March 12, 2019, Hill's submitted a written response, in which it acknowledged numerous new requirements it would be implementing to properly ensure the quality and safety of its products going forward, measures that were not in place prior to the 2019 recalls. These new requirements included requiring a Certificate of Analysis ("COA") for every vitamin premix lot and all trace material premixes[10] and increasing the frequency of audits of all

---

[4] *Id.*

[5] U.S. FOOD & DRUG ADMIN., *Hill's Pet Nutrition Expands Voluntary Recall of Select Canned Dog Food for Elevated Vitamin D* (Mar. 20, 2019), https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/hills-pet-nutrition-expands-voluntary-recall-select-canned-dog-food-elevated-vitamin-d.

[6] U.S. FOOD & DRUG ADMIN., *Hill's Pet Nutrition Additionally Expands Voluntary Recall of Select Canned Dog Food for Elevated Vitamin D* (May 21, 2019), https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/hills-pet-nutrition-additionally-expands-voluntary-recall-select-canned-dog-food-elevated-vitamin-d.

[7] The FDA's Form 483 is "issued to firm management at the conclusion of an inspection when an investigator(s) has observed any conditions that in their judgment may constitute violations of the Food Drug and Cosmetic (FD&C) Act and related Acts." U.S. FOOD & DRUG ADMIN., *FDA Form 483 Frequently Asked Questions* (Jan. 9, 2020), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/inspection-references/fda-form-483-frequently-asked-questions.

[8] Letter, Greg Albus, Hill's Pet Nutrition, Inc. to Cheryl A. Bigham, FDA Kansas City District, March 12, 2019, App'x 1 at 2.

[9] *Id.*

[10] *Id.* App'x 1 at 2.

suppliers controlling "hazards requiring preventive controls."[11] On December 10, 2019, the FDA

published a warning letter to Hill's summarizing findings from its investigation.[12] The warning

letter states, in part, that Hill's "did not sufficiently assess the probability that a vitamin D toxicity

or deficiency hazard will occur in the absence of a preventative control as required by 21 C.F.R. §

507.33(c)(1)."[13]

## II.    Procedural History

Between February 11, 2019, and February 20, 2019, six lawsuits were filed against

Defendants in courts across the country.[14] On February 20, 2019, certain plaintiffs moved pursuant

to 28 U.S.C. § 1407 before the United States Judicial Panel on Multidistrict Litigation ("JPML")

to centralize the cases. The JPML granted the motion on June 4, 2019, and ordered the cases to be

transferred and assigned to this Court for coordinated or consolidated pretrial proceedings. *In re

Hill's Pet Nutrition, Inc., Dog Food Prod. Liab. Litig.*, 382 F. Supp. 3d 1350, 1351 (J.P.M.L.

2019). On June 14, 2019, the JPML entered an order transferring to this Court an additional 15

tag-along cases that had been filed across the country between February 26, 2019, and May 28,

2019.[15] *In re Hill's Pet Nutrition, Inc., Dog Food Prod. Liab. Litig.*, MDL No. 2887 (J.P.M.L.

---

[11] *Id.* App'x 1 at 8.

[12] U.S. FOOD & DRUG ADMIN., *Warning Letter, Hill's Pet Nutrition Inc.* (Dec. 10, 2019), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/hills-pet-nutrition-inc-576564-11202019.

[13] *Id.*

[14] *Russell v. Hill's Pet Nutrition, Inc.*, No. 3:19-cv-00395-MCR-CJK (N.D. Fla. filed Feb. 11, 2019); *Bone v. Hill's Pet Nutrition, Inc.*, No. 1:19-cv-00831-LDH-CLP (E.D.N.Y. filed Feb. 11, 2019); *Navarrete v. Hill's Pet Nutrition, Inc.*, No. 3:19-cv-00767-WHA (N.D. Cal. filed Feb. 12, 2019); *Sun-Dampier v. Hill's Pet Nutrition, Inc.*, No. 3:19-cv-00819-EDL (N.D. Cal. filed Feb. 14, 2019); *Jubinville v. Hill's Pet Nutrition, Inc.*, No. 1:19-cv-00074-WES-PAS (D.R.I. filed Feb. 15, 2019); *Bauer v. Hill's Pet Nutrition, Inc.*, No. 3:19-cv-00908 (N.D. Cal. filed Feb. 20, 2019).

[15] *Hall v. Hill's Pet Nutrition, Inc.*, No. 2:19-cv-01423-JFW-KS (C.D. Cal. filed Feb. 26, 2019); *Chapman v. Hill's Pet Nutrition, Inc.*, No. 3:19-cv-00070-TRM-DCP (E.D. Tenn. filed Feb. 27, 2019); *Kra v. Hill's Pet Nutrition, Inc.*, No. 1:19-cv-01444-ENV-RML (E.D.N.Y. filed Mar.

June 14, 2019), ECF No. 127. Thirteen additional related cases were filed in the United States

District Court for the District of Kansas,[16] all of which were deemed included in MDL No. 2887

by orders entered between June 18, 2019, and July 11, 2019.[17] Subsequently, an additional tag-

---

12, 2019); *Conley v. Hill's Pet Nutrition, Inc.*, No. 2:19-cv-04363-LMA-MBN (E.D. La. filed Mar. 28, 2019); *Flanary v. Hill's Pet Nutrition, Inc.*, No. 1:19-cv-00243-MRB (S.D. Ohio filed Apr. 2, 2019); *Sahli v. Hill's Pet Nutrition, Inc.*, No. 3:19-cv-09239 (D.N.J. filed Apr. 3, 2019); *Skoog v. Hill's Pet Nutrition, Inc.*, No. 2:19-cv-01421-CMR (E.D. Penn. filed Apr. 3, 2019); *Reed v. Hill's Pet Nutrition, Inc.*, No. 2:19-cv-02225-LDH-RML (E.D.N.Y. filed Apr. 16, 2019); *McIlvaine v. Hill's Pet Nutrition, Inc.*, No. 2:19-cv-00497-AJS (W.D. Penn. filed Apr. 30, 2019); *Manier v. Hill's Pet Nutrition, Inc.*, No. 2:19-cv-04248-PSG-SK (C.D. Cal. filed May 16, 2019); *Connary v. Hill's Pet Nutrition, Inc.*, No. 5:19-cv-00913-PSG-SK (C.D. Cal. filed May 16, 2019); *Albion v. Hill's Pet Nutrition, Inc.*, No. 5:19-cv-00935-PSG-SK (C.D. Cal. filed May 20, 2019); *Lavalle v. Hill's Pet Nutrition, Inc.*, No. 2:19-cv-02971-NGG-JO (E.D.N.Y. filed May 20, 2019); *Infante v. Hill's Pet Nutrition, Inc.*, No. 1:19-cv-01502-KMT (D. Colo. filed May 24, 2019); *Jacoby-Hale v. Hill's Pet Nutrition, Inc.*, No. 1:19-cv-04951-PAE (S.D.N.Y. filed May 28, 2019). The JPML was also notified of two additional cases, both of which were voluntarily dismissed without prejudice prior to the entry of a transfer order. *Hodsdon v. Hill's Pet Nutrition, Inc.*, No. 3:19-cv-01130-WHA (N.D. Cal. filed Feb. 28, 2019) (voluntarily dismissed without prejudice on April 4, 2019); *Stewart v. Hill's Pet Nutrition, Inc.*, No. 3:19-cv-01306-EMC (N.D. Cal. filed Mar. 11, 2019) (voluntarily dismissed without prejudice on March 28, 2019).

[16] *Brown v. Hill's Pet Nutrition, Inc.*, No. 2:19-cv-02110-JAR-TJJ (D. Kan. filed Feb. 27, 2019); *Kristina Johnson v. Hill's Pet Nutrition, Inc.*, No. 2:19-cv-02118-JAR-TJJ (D. Kan. filed Mar. 4, 2019); *David Johnson v. Hill's Pet Nutrition, Inc.*, No. 2:19-cv-02121-JAR-TJJ (D. Kan filed Mar. 6, 2019); *Alberto v. Hill's Pet Nutrition, Inc.*, No. 2:19-cv-02135-JAR-TJJ (D. Kan. filed Mar. 12, 2019); *Schwegmann v. Hill's Pet Nutrition, Inc.*, No. 2:19-cv-02149-JAR-TJJ (D. Kan. filed Mar. 18, 2019); *Hess v. Hill's Pet Nutrition, Inc.*, No. 2:19-cv-02171-JAR-TJJ (D. Kan. filed Apr. 2, 2019); *Teegarden v. Hill's Pet Nutrition, Inc.*, No. 2:19-cv-02181-JAR-TJJ (D. Kan. filed Apr. 8, 2019); *Rider v. Hill's Pet Nutrition, Inc.*, No. 2:19-cv-02206-JAR-TJJ (D. Kan. filed Apr. 29, 2019); *Salazar v. Hill's Pet Nutrition, Inc.*, No. 2:19-cv-02295-JAR-TJJ (D. Kan. filed June 12, 2019); *Niemann v. Hill's Pet Nutrition, Inc.*, No. 2:19-cv-02308-JAR-TJJ (D. Kan. filed June 13, 2019); *Blaser v. Hill's Pet Nutrition, Inc.*, No. 2:19-cv-02345-JAR-TJJ (D. Kan. filed June 26, 2019); *Boggio v. Hill's Pet Nutrition, Inc.*, No. 2:19-cv-02360-JAR-TJJ (D. Kan. filed July 2, 2019); *DiCroce v. Hill's Pet Nutrition, Inc.*, No. 5:19-cv-04054-JAR-TJJ (D. Kan. filed July 9, 2019).

[17] Order, June 18, 2019, ECF No. 5 (deeming *Alberto*, *Salazar*, *Kristina Johnson*, *Schwegmann*, *David Johnson* included in MDL No. 2887); Order, June 20, 2019, ECF No. 6 (deeming *Brown*, *Niemann*, *Hess*, and *Rider* included in MDL No. 2887); Order, June 20, 2019, ECF No. 7 (deeming *Teegarden* included in MDL No. 2887); Order, June 27, 2019, ECF No. 8 (*Blaser*); Order, July 8, 2019, ECF No. 10 (*Boggio*); Order, July 11, 2019, ECF No. 11 (*DiCroce*).

along case[18] was transferred to MDL No. 2887,[19] and six of the cases included in the MDL have been voluntarily dismissed without prejudice.[20]

Counsel interested in seeking a leadership role in this MDL submitted briefs to the Court by July 22, 2019, *see* Order Amending Initial Scheduling Conference Date & Other Deadlines, ECF No. 3, and the Court held an initial conference on July 29, 2019, at which leadership presentations were made. Min. Entry, ECF No. 19. The Court entered an Order on July 31, 2019, appointing Co-Lead and Liaison Counsel and an Executive Committee to lead this MDL. Order Appointing Counsel, ECF No. 20.[21]

On August 12, 2019, the Parties submitted a Joint Status Report stating they had agreed to use the Honorable Wayne R. Andersen (Ret.), working out of the JAMS office in Chicago, as a mediator and scheduled the first all-day, in-person mediation for October 29, 2019, in Chicago. Joint Status Report 1, Aug. 12, 2019, ECF No. 29. They also reported they had productive discussions regarding the discovery each side needed prior to mediation. *Id.* On August 19, 2019, the Court held a scheduling conference and entered a scheduling order. Scheduling Order No. 1, ECF No. 34.

On October 29, 2019, the Parties conducted an in-person, day-long mediation before Judge

---

[18] *Fontenot v. Hill's Pet Nutrition, Inc.*, No. 1:19-cv-00594-MAC (E.D. Tex. filed Nov. 21, 2019).

[19] *In re Hill's Pet Nutrition, Inc., Dog Food Prod. Liab. Litig.*, MDL No. 2887 (J.P.M.L. Dec. 3, 2019), ECF No. 131.

[20] Am. Notice of Voluntary Dismissal, ECF No. 28 (*Lavelle*); Third Am. Notice of Voluntary Dismissal, ECF No. 30 (*Connary*); Notice of Voluntary Dismissal, ECF No. 31 (*Niemann*); Notice of Voluntary Dismissal, ECF No. 36 (*Albion*); Notice of Voluntary Dismissal, ECF No. 39 (*Manier*); Notice of Voluntary Dismissal, ECF No. 85 (*Boggio*).

[21] The Court appointed Richard B. Goetz and Thomas P. Schult as Defendants' Lead and Liaison Counsel; Gary E. Mason, Rachel E. Schwartz, Michael R. Reese, and Scott A. Kamber as Plaintiffs' Co-Lead Counsel and Interim Class Counsel; Rachel E. Schwartz as Liaison Counsel for All Plaintiffs; and Melissa R. Emert, Jeffrey Scott Goldenberg, Rosemary Medellin Rivas, and Charles E. Schaffer as Plaintiffs' Executive Committee and Interim Class Counsel.

Andersen at the JAMS office in Chicago. Declaration of Rachel E. Schwartz ("Schwartz Decl.") at ¶ 6, which is filed as Exhibit D. While the case did not settle, the Parties made meaningful progress toward reaching a resolution, and they diligently continued arm's-length settlement discussions with Judge Andersen during the months after the session. *Id.* These adversarial discussions involved the exchange of extensive information regarding the claims at issue and the products sold by Defendants. *Id.* At the Parties' request, the Court entered an order continuing the discovery stay on November 8, 2019. Order, Nov. 8, 2019, ECF No. 47.

At Judge Andersen's urging, the Parties sought additional time to continue settlement discussions, Joint Status Report, Mar. 16, 2020, which the Court granted, Order, Mar. 17, 2020, ECF No. 74. The Court subsequently entered several orders extending the discovery stay at the requests of the Parties.[22] Helpfully, Judge Andersen made a mediator's proposal containing some but not all of the material terms of the settlement. *Id.* at ¶ 11.

Ultimately, the Parties' settlement discussions resulted in the Settlement Agreement, which was fully executed on December 15, 2020. Schwartz Decl. ¶ 13.

## THE TERMS OF THE PROPOSED SETTLEMENT

In exchange for a narrowly tailored release that is limited to the claims that were based upon the specific facts alleged in this case and that excludes cat food-related claims and the *Eichhorn-Burkhard*[23] claims, §§ I.23–25, IX.69–72,[24] Defendants have agreed to a non-reversionary payment of $12.5 million to the Settlement Class, §§ I.33, II.40–41, IV.52. The

---

[22] Order, Apr. 14, 2020, ECF No. 76; Order, May 1, 2020, ECF No. 78; Order, July 20, 2020, ECF No. 84; Order, Aug. 17, 2020, ECF No. 87; Order, Sept. 24, 2020, ECF No. 89; Order, Oct. 20, 2020, ECF No. 91; Order, Nov. 17, 2020, ECF No. 93.

[23] *See Eichhorn-Burkhard v. Hill's Pet Nutrition, Inc.*, No. 2:19-cv-02672-JAR-TJJ (D. Kan. filed Oct. 30, 2019).

[24] Unless otherwise specified, all section (§) references herein are to sections of the Settlement Agreement, filed as Exhibit A.

Settlement's key terms are discussed below.

## I.      Defendants Agree to Settlement Class Certification for Settlement Purposes Only

Under the Agreement, the Parties agree to seek certification under Federal Rule of Civil

Procedure 23(a) and (b)(3) of a nationwide Settlement Class defined as follows, for Settlement

purposes only:

> [A]ll persons and entities that purchased Hill's Products in the United States from
> September 1, 2018 to May 31, 2019. Excluded from this Settlement Class are: all
> persons and entities that have been provided compensation from any Defendant and
> have executed a release for the claims described herein; Defendants, any entity in
> which Defendants have a controlling interest, and their legal representatives,
> officers, directors, employees, assigns and successors; persons and entities that
> purchased Hill's Products for resale or resold Hill's Products, but persons or entities
> that purchased Hill's Products for direct use are not excluded; the Judges to whom
> this case is assigned and any member of the Judges' staff or immediate family;
> Settlement Class Counsel; and putative Settlement Class Members who submit a
> valid Request for Exclusion prior to the Opt-Out Deadline.

§§ I.30, VII.61.[25] The "Hill's Products" are specifically defined in the Agreement and Exhibit 1

thereto and exclude any cat foods, dry dog food products, treats, Ideal Balance products, Healthy

Advantage products, or other products produced by Hill's that are not specifically listed in Exhibit

1. § I.12. The Parties further agree that the Court should designate the named Class Representatives

in the Consolidated Class Action Complaint as representatives for the Settlement Class. § VII.61.

## II.     The Settlement Provides Substantial Monetary Relief for the Settlement Class

To resolve the claims of the Settlement Class, Defendants have agreed to pay $12.5 million

into the Settlement Fund within 30 days after the Court enters the Preliminary Approval Order. §§

I.21, I.33, II.40. As long as the Settlement is approved and becomes final, no portion of the

Settlement Fund will revert to Defendants. §§ I.8, II.41, IV.49, IV.52, VIII.66–68.

---

[25] As set forth below and in the Consolidated Class Action Complaint filed on the same
day as this Motion, the Settlement Class also encompasses 47 state subclasses. §I.30; Consolidated
Compl. ¶¶ 128-174; *see infra* Argument Section II.

The Settlement Agreement contains a Plan of Allocation. Under the Agreement, Settlement Class Members may seek payment of Dog Injury Claims[26] and/or Consumer Food Purchase Claims.[27] § IV.48. A Settlement Class Member may, but is not required to, submit both a Dog Injury Claim and a Consumer Food Purchase Claim. *Id.* Submission of a valid, timely Claim Form will entitle a Settlement Class Member to a cash payment as set forth in the Settlement Agreement. § IV.49.a–b.

Settlement Class Members can submit a Consumer Food Purchase Claim with or without Proof of Purchase. If there is Proof of Purchase, the Settlement Class Member shall receive the full price of the Hill's Products as set forth in the Proof of Purchase. If there is not Proof of Purchase, the Class Member shall receive the MSRP for the Hill's Products claimed to have been purchased for up to a total value of $20. § IV.49.b. For Dog Injury Claims, Class Members shall be reimbursed for expenses related to the screening or treatment of their dogs for symptoms consistent with the consumption of excess vitamin D. The Settlement requires that Class Members submit documentation regarding these claims. § IV.49.a.

All payments of Settlement compensation to Settlement Class Members shall be made from the Settlement Fund after all costs of Settlement administration (including, but not limited to: costs

---

[26] "Dog Injury Claims" means claims seeking damages allegedly incurred by Settlement Class Members whose dogs consumed any Hill's Products and where the Settlement Class Member incurred any economic loss related to their dog's ingestion of excess levels of vitamin D through the consumption of the Hill's Products, specifically excluding any amounts that Hill's has already paid to the Settlement Class Member or on his or her behalf as part of a Hill's Claims Process. § I.7.

[27] "Consumer Food Purchase Claims" means claims solely for reimbursement of the costs associated with the purchase of Hill's Products by Settlement Class Members who have not been reimbursed for such costs to date, including through return or exchange of the Hill's Products. Any Consumer Food Purchase Claim will specifically exclude any amounts that Hill's has already paid to the Settlement Class Members or on their behalf as part of a Hill's Claims Process or amounts paid to Settlement Class Members by retailers following the recall. § I.3.

related to Class Notice; the fees and expenses of the Settlement Administrator, as approved by the Court; the Fee and Expense Award; and the Service Award Payments, as approved by the Court), are deducted from the Settlement Fund. § IV.50. If the total of the timely, valid, and approved Claims submitted exceeds the available relief minus any covered costs and expenses, each eligible Settlement Class Member's award shall be reduced on a *pro rata* basis. *Id.* If the total of the timely, valid and approved Claims is less than the available relief, minus any covered costs and expenses, each eligible Settlement Class Member's award shall be *pro rata* increased to no more than two-times the value of the timely, valid, and approved Claim absent any further written agreement by the Parties. *Id.* Settlement Class Counsel may make an application to the Court to seek approval for proposed additional distributions of the Unpaid Funds to Settlement Class Members if such distributions are economically feasible and will not exceed more than two-times the value of the timely, valid, and approved Claim, absent any further written agreement by the Parties. *Id.* In the event that residual funds remain after such distribution(s), Settlement Class Counsel may request that any remaining residual Unpaid Funds, if any, shall be paid to the Cy Pres Recipient, *id.*, which is Unleashed Pet Rescue, § I.5. Unleashed Pet Rescue does extraordinary work in the community on behalf of dogs. Schwartz Decl. ¶¶ 19-20.

Settlement Class Counsel believe $12.5 million is more than sufficient to completely satisfy the anticipated claims, without the need to reduce any claims *pro rata*, based on: Settlement Class Counsel's examination of Hill's Product sales information; Settlement Class Counsel's review of the statistics associated with Hill's ongoing expense reimbursement program; Settlement Class Counsel's extensive experience with class action settlements involving consumer products, and dog food in particular; and Settlement Class Counsel's communications with hundreds of Settlement Class Members, including the 71 Class Representatives named in the Consolidated

Complaint. Schwartz Decl. ¶ 14.

The Settlement contains a narrowly tailored release co-extensive with the legal and factual claims in this case for Settlement Class Members who do not opt out. The Settlement Agreement specifically excludes from the definition of Released Claims and from the Settlement "any and all claims involving Hill's cat foods, Hill's dry dog foods, Hill's treats, Hill's Ideal Balance products, and Hill's Healthy Advantage products not listed in Exhibit 1" and "any and all claims asserted in the complaint captioned *Eichhorn-Burkhard v. Hill's Pet Nutrition, Inc.*, No. 19-2672-JAR-TJJ (D. Kan.), which purports to assert class claims on behalf of a proposed European Union Class and a proposed German Sub-Class." §§ I.23, IX.69–71. The release is mutual, as Defendants will release the Class Representatives and Settlement Class Counsel from any and all claims that relate to prosecution of the Action, the Settlement Agreement, or the Settlement claims process (provided, however, that the release does not include claims by the Parties to enforce the terms of the Settlement). § IX.72.

The Notice, which will be available on the Settlement Website, will fully explain the Plan of Allocation and distribution of the Settlement Fund. §§ I.35, III.47.

Each Settlement Class Member will have the opportunity to object to or opt out of the Settlement, and this process is detailed in the Agreement. §§ III.47, V.54. Settlement Class Members who do not properly and timely submit Requests for Exclusion will be deemed to have waived all rights to opt out and will remain in the Settlement Class. §§ I.20, I.30, VII.62.f.

## III.    Service Awards to the Class Representatives Will Be Paid from the Settlement Fund

At least 21 days before the Opt-Out and Objection Deadlines, Settlement Class Counsel will file a motion seeking a service award payment for only the Class Representatives named in

the Consolidated Class Action Complaint to be paid from the Settlement Fund. § X.73. Settlement

Class Counsel's request for a service award will not exceed $500 per Class Representative. *Id.*

## IV.     Attorneys' Fees and Litigation Costs and Expenses Will Be Paid from the Settlement Fund

At least 21 days before the Opt-Out and Objection Deadlines, Settlement Class Counsel

will file a motion for an award of attorneys' fees and litigation costs to be paid from the Settlement

Fund. § XI.76. Settlement Class Counsel's request for attorneys' fees and expenses will not exceed

one-third of the Settlement Fund.[28]

## ARGUMENT

## I.     The Settlement Readily Meets the Standards for Preliminary Approval

Federal Rule of Civil Procedure 23 was amended in 2018 to codify the "preliminary

approval" process that is customary in class settlements. FED. R. CIV. P. 23 advisory committee's

note to 2018 amendment.[29] "As amended, Rule 23(e)(1) provides that the court must direct notice

to the class regarding a proposed class-action settlement only after determining that the prospect

of class certification and approval of the proposed settlement justifies giving notice." *Id.* In

particular, "[t]he court must direct notice in a reasonable manner to all class members who would

be bound by the proposal if giving notice is justified by the parties' showing that the court will

likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for

purposes of judgment of the proposal." FED. R. CIV. P. 23(e).

The requirement that a class action settlement be "fair, reasonable, and adequate" is nothing

new, as "each circuit has developed its own vocabulary for expressing these concerns." FED. R.

---

[28] Defendants take no position at this time on the propriety of this request for attorneys' fees and expenses.

[29] Internal quotations and citations omitted unless otherwise stated.

CIV. P. 23 advisory committee's note to 2018 amendment; *see also Nieberding v. Barrette Outdoor Living, Inc.*, No. 12-cv-2353-DDC-TJJ, 2015 WL 1645798, at *4 (D. Kan. Apr. 14, 2015); *In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 671, 675 (D. Kan. 2009).

Traditionally, the United States Court of Appeals for the Tenth Circuit has required courts to consider the following four factors (the "*Rutter* factors") in assessing whether a proposed settlement is fair, reasonable, and adequate:

> (1) whether the proposed settlement was fairly and honestly negotiated;
>
> (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
>
> (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
>
> (4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002) (citing *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993), *abrogated on other grounds by Devlin v. Scardelletti*, 536 U.S. 1 (2002), and *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984)); *accord Tennille v. W. Union Co.*, 785 F.3d 422, 434 (10th Cir. 2015); *In re Syngenta AG MIR162 Corn Litig.*, No. 14-md-02591-JWL, 2018 WL 1726345, at *2 (D. Kan. Apr. 10, 2018) (Lungstrum, J.).

However, as noted above, on December 1, 2018, amendments to Rule 23 went into effect. *Chavez Rodriguez v. Hermes Landscaping, Inc.*, No. 17-2142-JWB-KGG, 2020 WL 3288059, at *2 (D. Kan. June 18, 2020). Under new Rule 23(e)(2), if a proposed settlement "would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether":

> (A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

> (i) the costs, risks, and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2)(A)–(D). According to the Advisory Committee's note on the new Rule:

> The central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate. Courts have generated lists of factors to shed light on this concern. Overall, these factors focus on comparable considerations, but each circuit has developed its own vocabulary for expressing these concerns. In some circuits, these lists have remained essentially unchanged for thirty or forty years. The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.

FED. R. CIV. P. 23(e)(2) advisory committee's note to 2018 amendment. "The Tenth Circuit's additional factors largely overlap, with only the fourth factor not being subsumed into the new Rule 23." *Chavez Rodriguez*, 2020 WL 3288059, at *2; *see Murray v. Tips, Inc.*, No. 18-cv-00937-RM-KLM, 2020 WL 1852382, at *5 (D. Colo. Apr. 13, 2020). Plaintiffs address all of new Rule 23(e)(2)'s factors, as well as the fourth Tenth Circuit factor (the judgment of the parties), below.

### A.    The Class Representatives and Settlement Class Counsel Have Adequately Represented the Settlement Class

"Courts have analyzed the adequacy of representation by evaluating adequacy under Rule 23(a)(4)." *Chavez Rodriguez*, 2020 WL 3288059, at *2; *accord Murray*, 2020 WL 1852382, at *6; *In re Samsung Top-load Washing Mach. Mktg., Sales Practices & Prod. Liab. Litig.*, No. 17-ML-

2792-D, 2020 WL 2616711, at *12 (W.D. Okla. May 22, 2020) ("*In re Samsung*"). Because Plaintiffs address adequacy below, they do not repeat their arguments here. *See infra* Argument Section II.A.4.

### B. The Settlement Was Fairly, Honestly, and Extensively Negotiated

The first *Rutter* factor is subsumed under Rule 23(e)(2)(B)'s requirement for arm's-length negotiation. *Chavez Rodriguez*, 2020 WL 3288059, at *3.

A settlement is considered fairly and honestly negotiated when reached after arm's-length negotiations by experienced counsel with the assistance of a neutral mediator. *Murray*, 2020 WL 1852382, at *6; *Harris v. Chevron U.S.A., Inc.*, No. 15-cv-0094-PRW, 2019 WL 5846917, at *3 (W.D. Okla. July 29, 2019) ("Utilization of an experienced mediator during the settlement negotiations supports a finding that the settlement is reasonable, was reached without collusion, and should therefore be approved."); *Tripp v. Rabin*, No. 14-cv-2646-DDC-GEB, 2016 WL 3615572, at *3 (D. Kan. July 6, 2016) ("The contested nature of this suit, the engagement of a neutral mediator, and the extensive negotiation process constitute evidence that the parties negotiated the settlement agreement fairly and honestly."); *Marcus v. State of Kansas, Dep't of Revenue*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002) (requirement met where settlement was reached after arm's-length negotiations by experienced counsel with assistance of mediation).

As recounted above, settlement discussions began after the JPML consolidated numerous actions throughout the country before this Court and this Court appointed interim lead counsel. The Parties conducted two in-person, day-long mediation sessions with Judge Andersen, a well-respected and experienced mediator at JAMS. In addition, numerous subsequent discussions ensued with Judge Andersen's assistance. Schwartz Decl. ¶ 10. Judge Andersen eventually made a mediator's proposal containing some but not all of the material terms of the settlement. *Id.* at ¶

11. Ultimately, through an extended series of negotiations lasting months, the Parties reached the agreement set forth in the Settlement. *Id.* at ¶¶ 12-13.

The $12.5 million that the Settlement requires Defendants to pay speaks for itself as to the competence and vigor of Plaintiffs' representation in the litigation and at the bargaining table. This is an excellent result given the uncertainties of litigation and the risks to the Settlement Class described below. In sum, the history of the litigation, the Parties' arm's-length negotiations, and the Settlement's terms show the Settlement was fairly, honestly, and vigorously negotiated.

### C.   The Relief That the Settlement Agreement Provides for the Settlement Class Is Adequate

For the reasons below, the relief for the Settlement Class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief, including the method of processing claims; (iii) the terms of the proposed award of attorney's fees, including timing of payment; and (iv) the only agreement at issue.

### 1.   The Costs, Risks, and Delay of Trial and Appeal

The second and third *Rutter* factors "largely overlap and can be subsumed under Rule 23's requirement that the settlement agreement's adequacy be measured against the 'costs, risks, and delay of trial and appeal' of the underlying case." *Chavez Rodriguez*, 2020 WL 3288059, at *3. The court should consider the costs, risks, and delay of trial and appeal through the prism of "the vagaries of litigation." *See In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 625 (D. Colo. 1976). And the appropriate time to consider the costs, risks, and delay facing Plaintiffs is "the time the settlement was reached, not after settlement." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011) (rejecting objection to sufficiency of settlement that "suffer[ed] from hindsight bias and an unduly sanguine view of Plaintiffs' litigation risks").

Here, substantial costs, risks, and delay militate in favor of settlement. Schwartz Decl. ¶

16. Several years of challenges lay ahead for Plaintiffs, and victory is far from guaranteed. *Id.* Plaintiffs would face significant risks at every step of the way toward summary judgment and trial, as Defendants would vigorously oppose each of Plaintiffs' actions and appeal, if possible, decisions in Plaintiffs' favor. *Id.* Success on appeal would necessarily be uncertain. *Id.* Such litigation could include: (i) motions to dismiss and/or motions for judgment on the pleadings; (ii) contested class certification proceedings and possible interlocutory appeals of any class determination; (iii) costly and burdensome nationwide discovery, which would entail numerous depositions, interrogatories, and requests for admission, as well as voluminous document production; (iv) costly merits and class expert reports and discovery; (v) summary judgment motions; and (vi) trial. *Id.* Barring settlement, the case would "likely drag on for years, require the expenditure of millions of dollars, all the while class members would receive nothing." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir. 2005). Expensive and protracted litigation would continue on with no guaranteed or inevitable favorable outcome for either Plaintiffs or Defendants. *In re Dep't of Energy Stripper Well Exemption Litig.*, 653 F. Supp. 108, 117 (D. Kan. 1986). The risk that the finder of fact, the Court, and/or an appellate court might rule against Plaintiffs on a dispositive issue cannot be ignored and is not easily quantified.

Defendants likely would take issue with both the Plaintiffs' theory of and means of proving damages. "The amount of recovery Plaintiffs would have if they prevailed at trial is uncertain." *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992). "In class actions, the 'complexities of calculating damages increase geometrically.'" *Id.* "In quantifying damages, the parties will argue that different theories be employed." *Id.* Plaintiffs will argue for full compensation for injuries the Hill's Products caused to their dogs and for the money they paid for the Hill's Products. Among other things, Defendants will argue that consumers were not

defrauded—or at least not entitled to a full refund on their entire purchase price—and that the evidence does not show that ingestion of the Hill's Products injured any dogs. Defendants would also dispute the availability of any "price premium" damages for purchases of Hill's Products or that any compensation is available under any legal theory where dogs consumed affected food and experienced no ill effects. Additionally, Defendants would raise causality issues regarding whether the Hill's Products actually caused any alleged injuries to dogs, in general, and the dogs belonging to each of the Class Representatives, in particular.

In short, years of continued motion practice, trial, and appeals regarding the merits (including numerous questions of law, sufficiency of evidence, and admissibility of experts' opinions) of the claims lay ahead—with the eventual outcome uncertain and perhaps even unknowable. In contrast, the Settlement makes available $12.5 million in pure-cash relief, while eliminating these material risks. The salient question is whether the guaranteed recovery of $12.5 million outweighs the possibility that the Plaintiffs would have prevailed in extensive motion practice, trial, and appeals. Given the multitude of risks entailed in this litigation, a negotiated settlement guaranteeing $12.5 million is appropriate and in the best interests of the Class. *Tennille v. W. Union Co.*, No. 09-cv-00938-JLK-KMT, 2014 WL 5394624, at *4 (D. Colo. Oct. 15, 2014) ("The value of the Class Settlement Fund puts the bird in the hand rather than in the bush.").[30]

---

[30] *See also Swartz v. D-J Eng'g, Inc.*, No. 12-cv-01029-DDC-KGG, 2016 WL 633872, at *5 (D. Kan. Feb. 17, 2016) ("[T]he value of immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation."); *Belote v. Rivet Software, Inc.*, No. 12-cv-02792-WYD-MJW, 2014 WL 3906205, at *3 (D. Colo. Aug. 11, 2014) ("The presence of . . . doubt [as to the outcome] augurs in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation.").

2.      **The Effectiveness of the Proposed Method for Distributing Relief to the Settlement Class, Including the Method of Processing Settlement Class Members' Claims**

The Settlement proposes effective methods for distribution of monetary relief from the Settlement Fund to the Settlement Class Members and for processing Settlement Class Members' claims. The Settlement designates Heffler Claims Group, an experienced settlement administrator, as Settlement Administrator. Ex. C, Decl. of Jeanne C. Finegan, at ¶¶ 5-11 ("Finegan Decl"). Furthermore, the Settlement provides for a claims process that empowers the Settlement Administrator to handle Claim Forms in a rational, responsive, cost effective, and timely manner, including enumerated means of calculating the amounts of claims based on documentation provided from Settlement Class Members. §§ IV.49–53, VI.56.h–m, VI.60.

3.      **The Terms of the Proposed Award of Attorney's Fees and Expenses and Service Awards**

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." The proposed Preliminary Approval Order provides that Settlement Class Counsel will apply to the Court for an award of attorneys' fees and expenses that will not exceed one-third of the Settlement Fund, plus interest on these amounts at the same rate as earned by the Settlement Fund. At least 21 days before the Opt-Out and Objection Deadlines, Settlement Class Counsel will file a motion for an award of attorneys' fees and litigation costs and expenses to be paid from the Settlement Fund, in which Settlement Class Counsel will address the reasonableness of their requested fee and expense award. § X.76.

Settlement Class Counsel's fee request is well within the range that other courts in this District and the Tenth Circuit have approved in complex class actions. *See Nakamura v. Wells Fargo Bank, N.A.,* No. 17-4029-DDC-GEB, 2019 WL 2185081, at *1 (D. Kan. May 21, 2019) (awarding attorneys' fees of 33% of the gross settlement fund); *In re Universal Serv. Fund Tel.*

*Billing Practices Litig.,* No. 02-MD-1468-JWL, 2011 WL 1808038, at *2 (D. Kan. May 12, 2011) (finding a fee of one-third of the total amount of the settlement fund to be "a reasonable and appropriate fee"); *Barnwell v. Corr. Corp. of Am.*, No. 2:08-02151-JWL-DJW, slip op. at 2 (D. Kan. Feb. 12, 2009) (approving award of 33% of gross settlement amount) (attached as Exhibit I); *see also Chavez Rodriguez,* 2020 WL 3288059, at *4 (awarding attorneys' fees of 33% of the settlement amount after costs).

The Settlement provides that Settlement Class Counsel will request Service Award Payments that will not exceed $500 for each of the Class Representatives named in the Consolidated Class Action Complaint. § X.73. The $500-per-award amount is well within the range of possible approval. *See Chavez Rodriguez*, 2020 WL 3288059, at *4 (finally approving service awards of $7,500 to each of three named plaintiffs); *Shahlai v. Comcast Cable Commc'ns Mgmt., LLC*, No. 16-cv-02556-WJM-NRN, 2020 WL 3577395, at *4 (D. Colo. July 1, 2020) (incentive award of $5,000 was "very reasonable" given named plaintiff's participation and overall recovery); *see also Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (affirming $25,000 incentive award where named plaintiff achieved cash recovery of more than $13 million on behalf of the class); William B. Rubenstein, 5 Newberg on Class Actions § 17:1 (5th ed. 2020) ("Empirical evidence shows that incentive awards are now paid in most class suits and average between $10–15,000 per class representative."). The maximum total amount of all Service Award Payments for the 71 Class Representatives, $35,500, is 0.28% of the Settlement Fund. That the aggregate Service Award Payments constitute such a low percentage of the Settlement Fund reaffirms the reasonableness of the awards.

### 4.   The Parties Have No Additional Agreement Other Than an Agreement to Address Requests for Exclusion

Rule 23(e)(2)(C)(iv) requires the disclosure of any other agreements. The Parties have entered into a standard supplemental agreement, which provides solely that in the event a specified number of Settlement Class Members with valid, timely claims validly request exclusion from the Settlement Class, Defendants shall have the option to terminate the Settlement. § VIII.67. The Parties will simultaneously seek to file this Supplemental Agreement under seal.

### D.   The Settlement Agreement Treats Settlement Class Members Equitably Relative to Each Other

The relative amounts available to the Settlement Class Members are fair and equitable and reasonably compensate them for Dog Injury Claims and Consumer Food Purchase Claims, both with and without Proof of Purchase. §§ IV.49–53. Settlement Class Members with documented Dog Injury Claims will be reimbursed for the requested amounts, subject to the investigation and discretion of the Settlement Administrator and with consultation and approval by Settlement Class Counsel and Defendants' Counsel, as further detailed in the Agreement. *See* § IV.49.a. Settlement Class Members with Consumer Food Purchase Claims with Proof of Purchase will receive the full amount of their expenditures. § IV.49.b.i. And even Settlement Class Members without Proof of Purchase may receive the MSRP for claimed purchases of Hill's Products, up to a total value of $20. § IV.49.b.ii. All Settlement Class Members' claims will either be *pro rata* increased or decreased depending on the total number of valid, timely claims submitted.

### E.   Counsel Genuinely Believe the Settlement Agreement Is Fair and Reasonable

The final, additional factor courts in the Tenth Circuit consider is "the judgment of the parties that the settlement is fair and reasonable." *Chavez Rodriguez*, 2020 WL 3288059, at *2. In analyzing this factor, courts recognize that "the recommendation of a settlement by experienced

plaintiff[s'] counsel is entitled to great weight." *O'Dowd v. Anthem, Inc.*, No. 14-cv-02787-KLM-NYW, 2019 WL 4279123, at *14 (D. Colo. Sept. 9, 2019); *Hapka v. CareCentrix, Inc.*, No. 2:16-cv-02372-KGG, 2018 WL 1871449, at *5 (D. Kan. Feb. 15, 2018); *Marcus*, 209 F. Supp. 2d at 1183 ("'Counsels' judgment as to the fairness of the agreement is entitled to considerable weight.'"); *see also In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 690 (D. Colo. 2014) (finding that, even without formal discovery, the parties were able to give adequate consideration to the strengths and weaknesses of their respective claims).

Settlement Class Counsel, who are nationally respected litigators in the field of complex consumer class actions, have tirelessly advanced the Settlement Class's claims since the litigation's inception. *See* Schwartz Decl. ¶¶ 3-18. As reflected by their signatures to the Settlement and in their judgment, the Settlement is fair and reasonable—indeed, it represents an outstanding result for the Settlement Class. *Id.* at ¶ 17. This judgment is based not only on the calculus of risk in engaging in motion practice, trials, and appeals but also on the sizable monetary recovery the Settlement delivers now with certainty. *Id.* Relying on the judgment of counsel makes particular sense at preliminary approval because it is provisional and followed by more comprehensive review and objection procedures.

The fairness of this settlement is additionally confirmed because it was in large part the result of a proposal by a sophisticated, neutral mediator, who was well versed in the strengths and weaknesses of this litigation. Schwartz Decl. ¶ 18. Therefore, this factor further supports preliminary approval of the Settlement. All criteria for preliminary approval are met.

## II. The Court Should Preliminarily Certify the Settlement Class and State Subclasses and Appoint Settlement Class Counsel

Plaintiffs request that the Court provisionally certify the Settlement Class, as well as the

State Subclasses[31] set forth in the Consolidated Class Action Complaint, which the Settlement

Class completely encompasses. A proposed class must satisfy each of the four requirements set

forth in Federal Rule of Civil Procedure 23(a) and at least one subsection of Rule 23(b). *See*

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997) ("*Amchem*"). In determining

whether to certify a settlement class, the court need not consider whether a trial of the action based

on the proposed class definition would be hobbled by intractable management problems, "for the

proposal is that there be no trial." *Id.* at 620. A central purpose of provisional certification is to

provide the class members with notice of the settlement terms pending final approval and hearings

related thereto pursuant to Rule 23(e)–(h).

     In determining whether a proposed class passes muster under Rule 23, it may be necessary

for the Court to probe behind the pleadings as a part of its rigorous analysis. *Comcast Corp. v.*

---

[31] The "State Subclasses" are, collectively, classes of all persons residing in the following states who purchased Hill's Products within the period from September 1, 2018 to May 31, 2019 (proposed representatives of each class are set forth in parentheses next to each state's name): Alabama (Lafonda Guyton, Allison Kay), Alaska (Marc Haughaboo), Arizona (Tammy Lechner, Chuck Silveira), Arkansas (Michael Markiewicz), California (Janet Laurin, Andrew Tilles), Colorado (Jessie Hollister, Dan Marcus), Connecticut (Cara Kaufmann), District of Columbia (Marnie McCown), Florida (Janis Henderson, Michael Russell), Georgia (Karen Rohman, Taakena Ross), Hawaii (June Yoshinaga), Idaho (Sandra Lindquist, Vanessa Roberts), Illinois (Jamie Fain, Robin Prebe), Indiana (TJ Knowland), Iowa (Marla King, Jennifer Naeve), Kansas (Jack Blaser), Kentucky (Kristal Summer), Louisiana (Sandra Walker Evans), Maine (Angela Wickham), Maryland (Megan Carter), Massachusetts (Kristin DeCroce), Michigan (Kathy Klaassen, Rosemary Lanctot), Minnesota (Keith Heck, David Lovell), Missouri (Brandy Jeter), Montana (Mary Ippisch), Nebraska (Jennifer Cromwell), Nevada (Jeremiah Will Brigham), New Hampshire (Kathy Capron), New Jersey (Beatrice Friedman, Maritza Galindo, Kevin Kelly), New Mexico (Melissa Mendoza), New York (Sarah Ecton, Sally Hall, Lisette Kra, Harmony Stidham), North Carolina (Stacey Caskey, Linda Cole), Ohio (Kristina Centers, Sharon Hopkins, Janet Imfeld), Oklahoma (Cheryl McMurray), Oregon (Molly McDowell Dunston, Catherine Teegarden), Pennsylvania (Michelle Black, Robert Neve, Cheri Rusinack), Rhode Island (Claudia Hoyos), South Carolina (Melinda Hengel), Tennessee (Jeffrey Morris), Texas (Leiann Hawley, Stephanie Lett), Utah (Susan Pyper), Vermont (Toni Blanchard), Virginia (Demetrios Tsiptsis), Washington (Teresa Krage and Kay Okahashi), West Virginia (Crystal Russell), Wisconsin (Luann Tyborski), and Wyoming (Mary Ponce). Consolidated Compl. ¶¶ 128-74.

*Behrend*, 133 S. Ct. 1426, 1432 (2013). Nonetheless, where Rule 23's requirements are met, the court need not insist that the proposed class be defined with unassailable technical precision. *See, e.g.*, *Sibley v. Sprint Nextel Corp.*, 315 F.R.D. 642, 645 (D. Kan. 2016).

Defendants contend that, if the case were litigated, Defendants would present a host of individual issues that would defeat certification of the proposed class. Defendants therefore deny that the proposed class meets the requisites for class certification under Fed. R. Civ. P. 23 for any purpose other than settlement, and only forgo those defenses for that purpose.

### A.    The Settlement Class and State Subclasses Satisfy All Requirements of Rule 23(a)

#### 1.    The Settlement Class and State Subclasses Are Sufficiently Numerous

Rule 23(a)(1) requires Plaintiffs to show the Settlement Class and the State Subclasses are "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). The Tenth Circuit has declined to adopt a bright line rule as to what constitutes a sufficiently numerous class. *Trevino v. Adams*, 455 F.3d. 1155, 1162–63 (10th Cir. 2006). Courts "may use common sense in making assumptions to support a finding of numerosity." *Pinkston v. Wheatland Enters., Inc.*, No. 11-cv-2498-JAR, 2013 WL 1302053, at *3 (D. Kan. Mar. 27, 2013). Here, Co-Lead Counsel believe that more than a million cans of Hill's Products were sold to consumers in the United States, Schwartz Decl. ¶ 9, indicating the Settlement Class and State Subclasses easily satisfy the numerosity requirement.

#### 2.    There Are Questions of Law and Fact Common to the Settlement Class and the State Subclasses

Commonality requires the existence of a common question of law or fact. FED. R. CIV. P. 23(a)(2). The commonality requirement is met where plaintiffs' claims "depend on a common contention" as to which "determination of its truth or falsity will resolve an issue that is central to

the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *accord Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 725 F.3d 1213, 1218 (10th Cir. 2013). Moreover, for purposes of meeting the commonality requirement, even a single common question will do. *Wal-Mart Stores, Inc.*, 564 U.S. at 359; *accord DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010).

Here, the claims of the Settlement Class and the State Subclasses are all predicated upon resolution of a common contention: Defendants violated the law by manufacturing and selling the Hill's Products, which contained excessive levels or levels not as warranted of vitamin D, using deceptive representations as to the safety and quality of the Products, causing the Settlement Class Members and State Subclass members economic damages. Resolution of this common question requires evaluation of the question's merits under an objective standard, *i.e.*, the "reasonable consumer" test. *See, e.g.*, *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Because class-wide proceedings would "generate common *answers* apt to drive the resolution" of the central issues of fact and law in this case, commonality is met. *Wal-Mart Stores, Inc.*, 564 U.S. at 350.

### 3.    Plaintiffs' Claims Are Typical of the Claims of the Settlement Class and the State Subclasses

Typicality under Rule 23(a)(3) necessitates "comparison of the claims or defenses of the representative with the claims or defenses of the class." *Taylor v. Safeway Stores, Inc.*, 524 F.2d 263, 270 (10th Cir. 1975), *overruled on other grounds by Ruckelshaus v. Sierra Club*, 463 U.S. 680, 687–88 (1983). Satisfying the typicality requirement "is not an onerous burden." *Stambaugh v. Kan. Dep't of Corr.*, 151 F.R.D. 664, 677 (D. Kan. 1993). It is well established that the claims of plaintiffs and class members need not be identical. *Garcia v. Tyson Foods, Inc.*, 255 F.R.D. 678, 689 (D. Kan. 2009). "[D]iffering fact situations of class members do not defeat typicality under

Rule 23(a)(3) so long as the claims of the class representative and the class members are based on the same legal or remedial theory." *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988).

Here, Plaintiffs' claims are typical of the claims of the Settlement Class Members and the State Subclass members. As set forth above, Plaintiffs, all Settlement Class Members, and all State Subclass members suffered the same types of economic damages as a result of purchasing and/or consuming the Hill's Products. On behalf of all Settlement Class Members and all State Subclass members, Plaintiffs bring claims against Defendants for violation of state consumer protection law and the Magnuson-Moss Warranty Act, negligence, strict product liability, breach of express warranty and the implied warranty of merchantability, and unjust enrichment. Typicality is easily satisfied.

### 4. Plaintiffs and Settlement Class Counsel Fairly and Adequately Protect the Interests of the Settlement Class and the State Subclasses

The final requirement under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). To show this, plaintiffs must show they have interests that are sufficient to induce "vigorous advocacy," "not antagonistic" to class members' interests, and backed by "means, including competent counsel, to pursue their case." *Robinson v. Gillespie*, 219 F.R.D. 179, 185 (D. Kan. 2003); *accord Rutter & Wilbanks Corp.*, 314 F.3d at 1187–88. Uncovering "conflicts of interest between named parties and the class they seek to represent" is a key purpose of the adequacy requirement. *Amchem*, 521 U.S. at 625. "Minor conflicts between class members do not prevent certification." *Tripp v. Berman & Rabin, P.A.*, 310 F.R.D. 499, 506 (D. Kan. 2015). Absent evidence to the contrary, courts "will presume the proposed class counsel is adequately competent to conduct the proposed litigation." *Marcus v. Kan. Dep't of Revenue*, 206 F.R.D. 509, 512 (D. Kan. 2002).

Here, the Class Representatives have no fundamental conflicts with the interests of the

other Settlement Class Members and State Subclass members, as they seek the same type of relief and assert the same legal claims as other Settlement Class Members and State Subclass members. *See, e.g.*, *Emig v. Am. Tobacco Co.*, 184 F.R.D. 379, 387 (D. Kan. 1998) (typicality and adequacy of representation "overlap" because "the class representatives do not have an incentive to vigorously prosecute class claims" where typicality is absent). Similarly, Settlement Class Counsel are "qualified, experienced and generally able to conduct the litigation," *Marcus*, 206 F.R.D. at 512, as they do not represent any clients with interests at odds with the interests of the Settlement Class Members and/or the State Subclass members and have extensive experience in class action litigation and consumer advocacy. Schwartz Decl. ¶ 23; *id.*, Exs. E-H. Adequacy is met.

**B.     The Settlement Class and the State Subclasses Satisfy All Requirements of Federal Rule of Civil Procedure 23(b)(3)**

Rule 23(b)(3) provides that a class action may be maintained "if the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). Both requirements are met.

**1.     Common Legal and Factual Questions Predominate**

The predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). Predominance does not require the common questions to be answered in favor of the class on the merits. *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013). Only one common issue need predominate to satisfy Rule 23(b)(3). *Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 789 (10th Cir. 2019). Predominance is easily met in certain cases alleging consumer fraud, such as the case at bar. *Amchem*, 521 U.S. at 625.

Here, the common issues discussed above also satisfy predominance because they tower over any questions pertaining to individual Settlement Class Members and State Subclass members. As discussed above, the central contention in this case is that Defendants misrepresented material facts regarding the safety and quality of the Hill's Products, which contained excessive levels of vitamin D, causing Settlement Class Members and State Subclass members to pay a premium price for the Products and leading to illness and death of Settlement Class Members' and State Subclass members' dogs. Furthermore, the common pieces of evidence related to Defendants' challenged conduct, such as Defendants' representations about the manufacturing processes, quality, ingredients, and effects of the Hill's Products, as well as the recalls of the tainted Products, are not dependent on any conduct by the Settlement Class Members and the State Subclass members. Lastly, "'variations [in state laws] are irrelevant to certification of a settlement class' since a settlement would eliminate the principal burden of establishing the elements of liability under disparate laws." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 303 (3d Cir. 2011). Settlement also means "the manageability concerns posed by numerous individual questions of reliance disappear." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 241 (2d Cir. 2012).

### 2.     A Class Action Is the Superior Method to Adjudicate Plaintiffs' Claims

The Settlement itself essentially satisfies the superiority requirement. Furthermore, there are several reasons why the Court should find class proceedings are superior here. First, the Settlement Class Members and State Subclass members would not logically be interested in maintaining individual control or separate lawsuits given the time and expense involved as compared to the economic injuries and likely recovery thereon. Second, the consolidation of the various putative class actions before this Court by the JPML weighs in favor of finding that class litigation is the rational and superior approach. Third, federal courts in this Circuit and others have

held class actions to be the superior method for adjudication where class members' individual recovery would likely be de minimis. *Tripp*, 310 F.R.D. at 507 (collecting cases). Finally, the provisional certification that Plaintiffs seek will work no prejudice to absent members of the Settlement Class and State Subclasses, as Rule 23 protects their ability to object and to opt out. *Id.*

## III.   The Court Should Approve the Form and Content of the Proposed Notice to the Settlement Class and State Subclasses

Rule 23(e)(1)(B) requires the court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. FED. R. CIV. P. 23(e)(1)(B); *accord DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 943 (10th Cir. 2005). In addition, when a court certifies a class under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B). The notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." *Id.* The "best notice practicable" does not necessarily require actual notice, *e.g.*, mailed individual notice. *DeJulius*, 429 F.3d at 944. Instead, notice by publication can satisfy Rule 23 and due process when the identities of class members are unknown to the parties. *Id.*; *see also Tennille*, 785 F.3d at 438, 440 (affirming district court's approval of use of email notice to supplement direct mail notice); *Carpenters & Joiners Welfare Fund, Universal Care Inc. v. SmithKline Beecham Corp*, No. CV 04-3500 MJD/SRN, 2008 WL 4435734, at *2 (D. Minn. Sept. 30, 2008) (approving notice plan that "included first-class mail notice . . . , a published notice in

two national periodicals . . . , electronic notice through a dedicated website, and a staffed toll-free information line to answer questions").

Finally, due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). "The legal standards for satisfying Rule 23(c)(2)(B) and the constitutional guarantee of procedural due process are coextensive and substantially similar." *Flerlage v. US Foods, Inc.*, No. 18-cv-02614-DDC-TJJ, 2020 WL 4673155, at *7 (D. Kan. Aug. 12, 2020).

Here, the Parties developed a robust Notice Plan with the assistance of Heffler Claims Group that more than satisfies the aforementioned requirements, including the mandates of due process. The description of that Notice Plan is attached as Exhibit 5 to the Settlement Agreement. With respect to the methods of notice, the Notice Plan includes: (1) the long form notice, attached as Exhibit 3 to the Settlement Agreement, which will be directly emailed to Settlement Class Members and State Subclass members for whom an email address can reasonably be identified and directly mailed via U.S. mail to any Settlement Class Members and State Subclass members for whom only a physical address is known; (2) a press release, attached as Exhibit 6 to the Settlement Agreement, distributed via PR Newswire's US1 distribution, which will reach thousands of print and online media outlets; (3) digital advertising notices, examples of which are attached as Exhibit B, including (a) online display banner advertising specifically targeted to reach Settlement Class Members and State Subclass members, (b) keyword search targeting Settlement Class Members and State Subclass members, (c) social media through Facebook and Instagram, and (d) the Settlement Website, which will be established at www.petfoodsettlement.com, on which the Notices and other important case documents will be posted and which Settlement Class

Members and State Subclass members can use to electronically file their Claim Forms; (4) print publication (short form) notices, attached as Exhibit 4 to the Settlement Agreement, through the use of paid media, including an advertisement in an issue of the *Journal of the American Veterinary Medical Association*, a trade publication directed at veterinarians, and an issue of *National Geographic*; (5) a toll-free telephone number that will be established which Settlement Class Members and State Subclass members will be able to call 24 hours per day, 7 days per week, for more information about the Settlement, including but not limited to requesting copies of the Long Form Notice; and (6) the Claim Form, attached as Exhibit 2 to the Settlement Agreement. Notice to the Settlement Class and the State Subclasses will begin 31 days after entry of the Preliminary Approval Order. The contemplated means described above by which Settlement Class Members and State Subclass members will receive notice are the best practicable under the circumstances.

The information in the proposed Notice is provided in "plain English," and is presented in a format that is accessible to the reader. The proposed Notice defines the Settlement Class, explains all Settlement Class Member rights, releases, and applicable deadlines, and describes in detail the monetary terms of the Settlement Agreement, including the procedures for allocating and distributing settlement funds among the Settlement Class Members. The proposed Notice plainly indicates the time and place of the Final Approval Hearing and the method for objecting to or opting out of the Settlement. It details the provisions for payment of attorneys' fees and costs and Service Award Payments to the Class Representatives, and it provides contact information for Settlement Class Counsel. Substantially similar formats have been approved by courts in this Circuit, which further supports its approval. *See, e.g.*, *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. at 693 (approving notice that provided information including the anticipated recovery, reasons for the settlement, the amount of attorneys' fees or costs sought, and a summary of the plan of

allocation); *McNeely v. Nat'l Mobile Health Care, LLC*, No. CIV-07-933-M, 2008 WL 4816510, at *14 (W.D. Okla. Oct. 27, 2008) (approving content of notice because it was "drafted in plain, easily understood language, and clearly and concisely describes the nature of the action, contains the class definition, and sets forth the class claims and issues"). Thus, the proposed Notice is "the best notice practicable under the circumstances" and should be approved by the Court.

Accordingly, the Court should approve the form and plan of dissemination of Class Notice concerning the proposed Settlement. The Court should also appoint Heffler Claims Group as the Settlement Administrator. Heffler Claims Group is highly experienced in implementing notice plans that satisfy the requirements of due process and claims administration plans that are user-friendly and streamlined and that provide settlement class members, settlement class counsel, and courts with the necessary support. Finegan Decl. at ¶¶ 5-11.

## PROPOSED SCHEDULE FOR FINAL APPROVAL PROCEEDINGS

Finally, pursuant to Rule 23(e)(2), Plaintiffs request that the Court schedule the time, date, and place of the Final Approval Hearing to decide whether the settlement is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). Plaintiffs also request that the Court set deadlines for mailing the Notice, publishing the Publication/Short-Form Notice, and requesting exclusion from the Settlement Class, objecting to the Settlement, submitting Proof of Claim forms, and filing papers in support of the Settlement. Plaintiffs respectfully propose the following schedule:

| Event | Deadline |
|---|---|
| Deadline for Defendants to provide Settlement Administrator with contact information for any putative Class Members | 5 calendar days after the Court enters the Preliminary Approval Order |
| Deadline for establishment of Settlement Fund | At least 30 days after the Court enters the Preliminary Approval Order |
| Notice Program | Notice Program shall commence no more than 30 days after the Court enters the Preliminary Approval Order and be completed within 90 days after the Court enters the Preliminary Approval Order. |
| Motion for Final Approval of Settlement | 21 days before the opt-out and objection deadlines |
| Motion for attorneys' fees and litigation costs and expenses and Class Representative Service Award Payments due | 21 days before the opt out and objection deadlines |
| Objection filing deadline | 135 days after the Court enters Preliminary Approval Order, which is 45 days after the conclusion of the Notice Program. |
| Affidavit attesting to implementation of the Notice Plan in accordance with Preliminary Approval Order and report identifying all opt-outs and objectors due | 14 days prior to the Final Approval Hearing |
| Objection response deadline | 14 days after the objection filing deadline, 149 days after the entry of the Preliminary Approval Order. |
| Opt-out deadline | Same as Objection filing deadline |
| Final Approval Hearing | To be decided by the Court but no less than 7 days after the Objection Response Deadline, which is 156 days from entry of the Preliminary Approval Order |
| Deadline for submission of all Dog Injury Claims and Consumer Food Purchase Claims | 14 days prior to the Final Approval Hearing, unless a later date is otherwise agreed to by the Parties. No less than 90 days from the start of the Notice Program. |

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) preliminarily approve the Settlement Agreement; (2) provisionally certify the Settlement Classes for settlement purposes only; (3) appoint the following Plaintiffs as Class Representatives: Michelle Black, Toni Blanchard, Jack Blaser, Jeremiah Will Brigham, Stacey Caskey, Kathy Capron, Megan Carter,

Kristina Centers, Linda Cole, Jennifer Cromwell, Kristin DeCroce, Molly McDowell Dunston, Sarah Ecton, Sandra Walker Evans, Jamie Fain, Beatrice Friedman, Maritza Galindo, Lafonda Guyton, Sally Hall, Marc Haughaboo, Leiann Hawley, Keith Heck, Janis Henderson, Melinda Hengel, Jessie Hollister, Sharon Hopkins, Claudia Hoyos, Janet Imfeld, Mary Ippisch, Brandy Jeter, Cara Kaufmann, Allison Kay, Kevin Kelly, Marla King, Kathy Klaassen, TJ Knowland, Lisette Kra, Teresa Krage, Rosemary Lanctot, Janet Laurin, Tammy Lechner, Stephanie Lett, Sandra Lindquist, David Lovell, Dan Marcus, Michael Markiewicz, Marnie McCown, Cheryl McMurray, Melissa Mendoza, Jeffrey Morris, Jennifer Naeve, Robert Neve, Kay Okahashi, Mary Ponce, Robin Prebe, Susan Pyper, Vanessa Roberts, Karen Rohman, Taakena Ross, Cheri Rusinack, Michael Russell, Crystal Russell, Chuck Silveira, Harmony Stidham, Kristal Summers, Catherine Teegarden, Andrew Tilles, Demetrios Tsiptsis, Luann Tyborski, Angela Wickham, and June Yoshinaga; (4) appoint Scott A. Kamber of KamberLaw LLC, Gary E. Mason of Mason Lietz & Klinger LLP, Michael R. Reese of Reese LLP, and Rachel E. Schwartz of Stueve Siegel Hanson LLP as Settlement Class Counsel; (5) approve the form and manner of the Notice Plan and claims process; (6) appoint Heffler Claims Group as Settlement Administrator for the Settlement; and (7) set the schedule for the final approval process as set forth above, including a date and time for the Final Approval Hearing.

Date: December 15, 2020

Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

By: _Rachel E. Schwartz_
Rachel E. Schwartz, KS Bar # 21782
schwartz@stuevesiegel.com
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7125
Facsimile: (816) 714-7101

*Plaintiffs' Co-Lead, Liaison, and Interim
Class Counsel*

**MASON LIETZ & KLINGER LLP**
Gary E. Mason
gmason@masonllp.com
5101 Wisconsin Avenue Northwest, Suite 305
Washington, District of Columbia 20016
Telephone: (202) 429-2290
Facsimile: (202) 429-2294

*Plaintiffs' Co-Lead and Interim Class Counsel*

**REESE LLP**
Michael Robert Reese
mreese@reesellp.com
100 West 93rd Street, 16th floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Plaintiffs' Co-Lead and Interim Class Counsel*

**KAMBERLAW LLC**
Scott A. Kamber
skamber@kamberlaw.com
201 Milwaukee Street, Suite 200
Denver, Colorado 80206
Telephone: (303) 222-9008
Facsimile: (212) 202-6364

*Plaintiffs' Co-Lead and Interim Class Counsel*

**GOLDENBERG SCHNEIDER, LPA**
Jeffrey S. Goldenberg
jgoldenberg@gs-legal.com
One West Fourth Street, 18th Floor
Cincinnati, Ohio 45202
Telephone: (513) 345-8297
Facsimile: (513) 345-8294

**LEVI & KORSINSKY, LLP**
Rosemary M. Rivas
rrivas@zlk.com
388 Market Street, Suite 1300
San Francisco, California 94111
Telephone: (415) 373-1672
Facsimile: (415) 484-1294

**LEVIN SEDRAN & BERMAN, LLP**
Charles E. Schaffer
cschaffer@lfsblaw.com
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663

**KANTROWITZ, GOLDHAMER &
GRAIFMAN, P.C.**
Melissa R. Emert
memert@kgglaw.com
747 Chestnut Ridge Road, Suite 200
Chestnut Ridge, New York 10977
Telephone: (845) 356-2570
Facsimile: (845) 356-4335

*Plaintiffs' Executive Committee and Interim
Class Counsel*