## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| **IN RE: HILL'S PET NUTRITION, INC. DOG FOOD PRODUCTS LIABILITY LITIGATION** | MDL No. 2887 |
| | Case No. 2:19-md-02887-JAR-TJJ |
| **This Document Relates to All Cases, Except:** | |
| ***Diana Anja Eichorn-Burkhard v. Hill's Pet Nutrition, Inc. et al.***, Case No. 19-CV-02672- JAR-TJJ; | |
| **and** | |
| ***Bone, et al. v. Hill's Pet Nutrition, Inc., et al.***, Case No. 19-CV-02284-JAR-TJJ (cat and dry dog food-related claims only. This complaint DOES apply to all wet dog food-related claims in the ***Bone*** complaint). | |

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, APPROVAL OF CLASS NOTICE PROGRAM, AND APPOINTMENT OF SETTLEMENT CLASS COUNSEL AND <u>SETTLEMENT ADMINISTRATOR</u>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION ...................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................... 2

I.     HISTORY OF THE LITIGATION AND SETTLEMENT DISCUSSIONS .................... 2

II.    THE TERMS OF THE PROPOSED SETTLEMENT ........................................ 2

       A.     The Settlement Provides Substantial Monetary Relief for the Settlement
              Class ............................................................................................................ 4

       B.     Service Awards to the Class Representatives ........................................... 7

       C.     Attorneys' Fees and Litigation Costs and Expenses................................ 7

III.   PRELIMINARY APPROVAL ...................................................................... 7

IV.    NOTICE AND CLAIM PROCESS................................................................ 8

ARGUMENT AND AUTHORITIES ....................................................................... 10

I.     THE SETTLEMENT WARRANTS FINAL APPROVAL............................... 10

       A.     The Class Representatives and Settlement Class Counsel Have Adequately
              Represented the Settlement Class .......................................................... 12

       B.     The Settlement Was Fairly, Honestly, and Extensively Negotiated at
              Arm's Length and With an Experienced Mediator................................. 12

       C.     The Relief That the Settlement Agreement Provides for the Settlement
              Class Is Adequate.................................................................................... 14

       D.     The Settlement Treats Settlement Class Members Equitably................. 20

       E.     The Judgment of the Settling Parties ..................................................... 21

       F.     The Proposed Plan of Allocation Is Fair, Reasonable, and Adequate .... 22

II.    THE COURT SHOULD CONFIRM CERTIFICATION OF THE SETTLEMENT
       CLASS AND THE STATE SUBCLASSES AND CONFIRM THE
       APPOINTMENT OF SETTLEMENT CLASS COUNSEL............................... 23

       A.     The Settlement Class and State Subclasses Satisfy Rule 23(a)'s
              Requirements .......................................................................................... 24

B. The Settlement Class and the State Subclasses Satisfy the Predominance and Superiority Requirements of Federal Rule of Civil Procedure 23(b)(3)........ 30

III. PLAINTIFFS HAVE PROVIDED SUFFICIENT NOTICE TO THE SETTLEMENT CLASS AND THE STATE SUBCLASSES TO SATISFY FEDERAL RULE OF CIVIL PROCEDURE 23 AND DUE PROCESS ....................... 34

A. The Distribution and Timing of Notice Satisfy Rule 23 and Due Process ........... 34

B. The Content of the Notice and the Opportunity to Object or Opt Out Satisfy Rule 23 and Due Process ........................................................................ 35

CONCLUSION ................................................................................................................... 37

# **TABLE OF AUTHORITIES**

Page(s)

## **Cases**

*Adamson v. Bowen,*
  855 F.2d 668 (10th Cir. 1988) .......................................................................... 27

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997).................................................................................. passim

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds,*
  568 U.S. 455 (2013).......................................................................................... 31

*Antonson v. Robertson,*
  141 F.R.D. 501 (D. Kan. 1991)......................................................................... 29

*Chatelain v. Prudential-Bache Sec., Inc.,*
  805 F. Supp. 209 (S.D.N.Y. 1992) .................................................................... 15

*Chavez Rodriguez v. Hermes Landscaping, Inc.,*
  No. 17-cv-02142-JWB-KGG, 2020 WL 3288059 (D. Kan. June 18, 2020) .......... 11, 12, 14, 17

*Christine Asia Co. v. Yun Ma,*
  No. 1:15-md-02631-CM-SDA, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ........................ 16

*Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.,*
  765 F.3d 1205 (10th Cir. 2014) .................................................................... 24, 25

*Comcast Corp. v. Behrend,*
  569 U.S. 27 (2013)............................................................................................ 16

*DeJulius v. New England Health Care Employees Pension Fund,*
  429 F.3d 935 (10th Cir. 2005) .......................................................................... 34

*Devlin v. Scardelletti,*
  536 U.S. 1 (2002).............................................................................................. 11

*DG ex rel. Stricklin v. Devaughn,*
  594 F.3d 1188 (10th Cir. 2010) ........................................................................ 25

*Diaz v. Romer,*
  801 F. Supp. 405 (D. Colo. 1992)..................................................................... 10

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156 (1974).......................................................................................... 34

*Emig v. Am. Tobacco Co.,*
  184 F.R.D. 379 (D. Kan. 1998)......................................................................... 29

*Eubank v. Pella Corp.,*
  753 F.3d 718 (7th Cir. 2014) ............................................................................ 20

*Farley v. Fam. Dollar Stores, Inc.,*
  No. 12-cv-00325-RM-MJW, 2014 WL 5488897 (D. Colo. Oct. 30, 2014) ............................ 13

*Greenspun v. Bogan,*
  492 F.2d 375 (1st Cir. 1974)............................................................................. 35

*Grunin v. Int'l House of Pancakes,*
  513 F.2d 114 (8th Cir. 1975) ............................................................................ 35

*Hapka v. CareCentrix, Inc.,*
  No. 2:16-cv-02372-KGG, 2018 WL 1871449 (D. Kan. Feb. 15, 2018)................................. 21

*Hefler v. Wells Fargo & Co.*,
No. 16-cv-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ................................... 23

*Horton v. Molina Healthcare, Inc.*,
No. 17-cv-00266-CVE-JFJ, 2019 WL 2207676 (N.D. Okla. May 22, 2019) ......................... 13

*In re Aluminum Phosphide Antitrust Litig.*,
160 F.R.D. 609 (D. Kan. 1995)............................................................................................... 29

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
689 F.3d 229 (2d Cir. 2012).................................................................................................... 32

*In re Charter Commc'ns, Inc., Sec. Litig.*,
No. 4:02-cv-01186-CAS, 2005 WL 4045741 (E.D. Mo. June 30, 2005)................................ 22

*In re Cmty. Bank of N. Virginia*,
418 F.3d 277 (3d Cir. 2005).................................................................................................... 23

*In re Corrugated Container Antitrust Litig.*,
643 F.2d 195 (5th Cir. 1981) .................................................................................................. 28

*In re Crocs, Inc. Secs. Litig.*,
306 F.R.D 672 (D. Colo. 2014). ........................................................................................ 35, 36

*In re Dep't of Energy Stripper Well Exemption Litig.*,
653 F. Supp. 108 (D. Kan. 1986)............................................................................................ 15

*In re Glob. Crossing Secs. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................................................ 29

*In re Heritage Bond Litig.*,
No. 02-ML-1475-DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ..................................... 22

*In re King Res. Co. Secs. Litig.*,
420 F. Supp. 610 (D. Colo. 1976)........................................................................................... 18

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................................................. 22

*In re Scotts EZ Seed Litig.*,
No. 12-cv-4727-VB, 2015 WL 5502053 (S.D.N.Y. July 7, 2015)........................................... 35

*In re Sprint Corp. ERISA Litig.*,
443 F. Supp. 2d 1249 (D. Kan. 2006)..................................................................................... 15

*In re Syngenta AG MIR162 Corn Litig.*,
357 F. Supp. 3d 1094 (D. Kan. 2018)................................................................................ 12, 18

*In re Thornburg Mortg., Inc. Secs. Litig.*,
912 F. Supp. 2d 1178 (D.N.M. 2012) ........................................................................ 10, 16, 17

*In re Universal Serv. Fund Tel. Billing Practices Litig.*,
No. 02-MD-1468-JWL, 2011 WL 1808038 (D. Kan. May 12, 2011)...................................... 19

*In re Urethane Antitrust Litig.*,
237 F.R.D. 440 (D. Kan. 2006)............................................................................................... 33

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004).................................................................................................... 10

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
396 F.3d 922 (8th Cir. 2005) .................................................................................................. 17

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) .................................................................................................. 10

*Kerner v. City & Cty. of Denver*,
No. 11-cv-00256-MSK-KMT, 2012 WL 7802744 (D. Colo. Nov. 30, 2012).......................... 33

*Lucas v. Kmart Corp.*,
    234 F.R.D. 688 (D. Colo. 2006) ......................................................................... 17, 22
*McNeely v. Nat'l Mobile Health Care, LLC*,
    No. 07-cv-00933-M, 2008 WL 4816510 (W.D. Okla. Oct. 27, 2008) .............................. 18, 36
*Menocal v. GEO Grp., Inc.*,
    882 F.3d 905 (10th Cir. 2018) ................................................................................ 30
*Miller v. Republic Nat. Life Ins. Co.*,
    559 F.2d 426 (5th Cir. 1977) ................................................................................. 35
*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950)............................................................................................ 34
*Nakamura v. Wells Fargo Bank, N.A.*,
    No. 17-4029-DDC-GEB, 2019 WL 2185081 (D. Kan. May 21, 2019) ................................ 19
*Naylor Farms, Inc. v. Chaparral Energy, LLC*,
    923 F.3d 779 (10th Cir. 2019) ............................................................................... 31
*Nieberding v. Barrette Outdoor Living, Inc.*,
    129 F. Supp. 3d 1236 (D. Kan. 2015)........................................................................ 21
*Nieberding v. Barrette Outdoor Living, Inc.*,
    302 F.R.D. 600 (D. Kan. 2014)............................................................................... 27
*O'Dowd v. Anthem, Inc.*,
    No. 14-cv-02787-KLM-NYW, 2019 WL 4279123 (D. Colo. Sept. 9, 2019) ........................ 21
*Ogden v. Figgins*,
    315 F.R.D. 670 (D. Kan. 2016)............................................................................... 28
*Ogden v. Figgins*,
    No. 2:16-cv-02268-JAR, 2017 WL 5068906 (D. Kan. Nov. 3, 2017) ............................ 11, 13
*Olenhouse v. Commodity Credit Corp.*,
    136 F.R.D. 672 (D. Kan. 1991)............................................................................... 25
*Pelt v. Utah*,
    539 F.3d 1271 (10th Cir. 2008) .............................................................................. 29
*Perkins v. Linkedin Corp.*,
    No. 13-cv-04303-LHK, 2016 WL 613255 (N.D. Cal. Feb. 16, 2016) ............................... 35
*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)............................................................................................ 36
*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
    314 F.3d 1180 (10th Cir. 2002) ....................................................................... passim
*Shapiro v. All. MMA, Inc.*,
    No. 17-cv-02583-RBK-AMD, 2018 WL 3158812 (D.N.J. June 28, 2018) ........................... 13
*Shaw v. Interthinx, Inc.*,
    No. 13-cv-01229-REB-NYW, 2015 WL 1867861 (D. Colo. Apr. 22, 2015) ........................ 10
*Smith v. MCI Telecommunications Corp.*,
    124 F.R.D. 665 (D. Kan. 1989)............................................................................... 27
*Sullivan v. DB Investments, Inc.*,
    667 F.3d 273 (3d Cir. 2011)................................................................................... 32
*Swartz v. D-J Eng'g, Inc.*,
    No. 12-cv-01029-DDC-KGG, 2016 WL 633872 (D. Kan. Feb. 17, 2016) ........................... 18
*Taylor v. Safeway Stores, Inc.*,
    524 F.2d 263 (10th Cir. 1975) ............................................................................... 27

*Tennille v. W. Union Co.*,
 785 F.3d 422 (10th Cir. 2015) ....................................................... 28, 34, 36

*Tyson Foods, Inc. v. Bouaphakeo*,
 577 U.S. 442 (2016) ............................................................................. 31, 32

*United Food & Com. Workers Union v. Chesapeake Energy Corp.*,
 281 F.R.D. 641 (W.D. Okla. 2012) .............................................................. 30

*United Founders Life Ins. Co. v. Consumers Nat. Life Ins. Co.*,
 447 F.2d 647 (7th Cir. 1971) ...................................................................... 35

*Wakefield v. Monsanto Co.*,
 120 F.R.D. 112 (E.D. Mo. 1988) ................................................................ 30

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011) ............................................................................ 25, 26

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
 396 F.3d 96 (2d Cir. 2005) ......................................................................... 10

*Williams v. Gerber Prods. Co.*,
 552 F.3d 934 (9th Cir. 2008) ...................................................................... 26

*Williams v. Sprint/United Mgmt. Co.*,
 No. 03-cv-02200-JWL, 2007 WL 2694029 (D. Kan. Sept. 11, 2007)........... 21

*XPO Logistics, Inc. v. Leeway Glob. Logistics, LLC*,
 No. 2:15-cv-00703-CW, 2018 WL 400769 (D. Utah Jan. 12, 2018) ............ 12

*Zapata v. IBP, Inc.*,
 167 F.R.D. 147 (D. Kan. 1996)................................................................... 27

## INTRODUCTION

Plaintiffs[1] respectfully move the Court for final approval of the Class Action Settlement (ECF No. 98-1) and certification of the Settlement Class and state subclasses for purposes of carrying out the Settlement. The Settlement before the Court is the product of thorough investigation by Plaintiffs and more than a year of hard-fought, arm's-length settlement negotiations, including significant settlement-related discovery; two day-long, in-person mediation sessions with the aid of an experienced and well-respected mediator – the Honorable Wayne R. Andersen (Ret.); and numerous subsequent communications between each Party and Judge Andersen. *See* Declaration of Rachel E. Schwartz in Support of Motion for Final Approval Settlement ¶ 4 ("Decl. Schwartz") (filed concurrently herewith). Thus, at the time the Parties reached an agreement to settle, Plaintiffs and Settlement Class Counsel possessed a thorough understanding of the strengths and weaknesses of the claims Plaintiffs asserted on behalf of the Settlement Class.

The Settlement resolves Plaintiffs' claims that certain varieties of Hill's Prescription Diet and Science Diet canned dog food products were defective and deceptively labeled with respect to their safety and quality because they contained dangerously high levels of vitamin D, which can cause dogs to experience serious health issues and even death. The Settlement benefits the Settlement Class by conferring a guaranteed, immediate, and substantial benefit of $12,500,000, without any reversion to Defendants, and avoids the risks of continued litigation, including the risk of recovering less than the amount of the Settlement Fund or of recovering nothing at all. Plaintiffs respectfully submit that the Settlement is fair, reasonable, and adequate and in the best interests of

---

[1] Capitalized terms shall have the meaning that the Class Settlement Agreement ascribes to them.

the Settlement Class and that final approval of the Settlement following the Final Approval Hearing, scheduled for July 27, 2021, is warranted.

## FACTUAL BACKGROUND

The Declaration of Rachel E. Schwartz is an integral part of this submission. Plaintiffs respectfully refer the Court to it for, among other things, a detailed description of the factual and procedural history of the litigation and the claims and defenses the Parties asserted, the risks of continued litigation, and the negotiations leading to the Settlement.

## I.     HISTORY OF THE LITIGATION AND SETTLEMENT DISCUSSIONS

In Plaintiffs' Memorandum of Law in Support of their Unopposed Motion for Preliminary Approval of Settlement ("Plaintiffs' Preliminary Approval Memorandum"), Plaintiffs set forth in detail the allegations raised, the procedural history of this litigation, and the more than a year of settlement discussions that concluded with the settlement pending before this Court. ECF No. 98 at 8-15. Rather than restate those facts, Plaintiffs incorporate by reference that background here.

## II.    THE TERMS OF THE PROPOSED SETTLEMENT

In Plaintiffs' Preliminary Approval Memorandum, Plaintiffs extensively discussed the terms of the Settlement. ECF No. 98 at 15-19. Plaintiffs briefly summarize the key terms here.

In exchange for a narrowly tailored release that is limited to the claims that were based upon the specific facts alleged in this case (and that excludes cat food-related claims, the *Eichhorn-Burkhard*[2] claims on behalf of European Union consumers (with a subclass of German consumers), and the dry dog food claims in *Bone, et al. v. Hill's Pet Nutrition, Inc., et al.*, Case No. 19-CV-

---

[2] *See Eichhorn-Burkhard v. Hill's Pet Nutrition, Inc.*, No. 2:19-cv-02672-JAR-TJJ (D. Kan. filed Oct. 30, 2019).

02284-JAR-TJJ), §§ I.23–25, IX.69–72,[3] Defendants have agreed to a non-reversionary payment of $12.5 million to the Settlement Class, §§ I.33, II.40–41, IV.52.

Under the Agreement, the Parties agree to seek certification under Federal Rule of Civil Procedure 23(a) and (b)(3) of a nationwide Settlement Class defined as follows, for Settlement purposes only:

> [A]ll persons and entities that purchased Hill's Products in the United States from September 1, 2018 to May 31, 2019. Excluded from this Settlement Class are: all persons and entities that have been provided compensation from any Defendant and have executed a release for the claims described herein; Defendants, any entity in which Defendants have a controlling interest, and their legal representatives, officers, directors, employees, assigns and successors; persons and entities that purchased Hill's Products for resale or resold Hill's Products, but persons or entities that purchased Hill's Products for direct use are not excluded; the Judges to whom this case is assigned and any member of the Judges' staff or immediate family; Settlement Class Counsel; and putative Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline.

§§ I.30, VII.61. The Settlement Class encompasses the 47 State Subclasses[4] which are set forth in

---

[3] Unless otherwise specified, all section (§) references are to sections of the Settlement Agreement.

[4] The "State Subclasses" are, collectively, classes of all persons residing in the following states or territories who purchased Hill's Products within the period from September 1, 2018 to May 31, 2019 (proposed representatives of each class are set forth in parentheses next to each state's name): Alabama (Lafonda Guyton, Allison Kay), Alaska (Marc Haughaboo), Arizona (Tammy Lechner, Chuck Silveira), Arkansas (Michael Markiewicz), California (Janet Laurin, Andrew Tilles), Colorado (Jessie Hollister, Dan Marcus), Connecticut (Cara Kaufmann), District of Columbia (Marnie McCown), Florida (Janis Henderson, Michael Russell), Georgia (Karen Rohman, Taakena Ross), Hawaii (June Yoshinaga), Idaho (Sandra Lindquist, Vanessa Roberts), Illinois (Jamie Fain, Robin Prebe), Indiana (TJ Knowland), Iowa (Marla King, Jennifer Naeve), Kansas (Jack Blaser), Kentucky (Kristal Summer), Louisiana (Sandra Walker Evans), Maine (Angela Wickham), Maryland (Megan Carter), Massachusetts (Kristin DeCroce), Michigan (Kathy Klaassen, Rosemary Lanctot), Minnesota (Keith Heck, David Lovell), Missouri (Brandy Jeter), Montana (Mary Ippisch), Nebraska (Jennifer Cromwell), Nevada (Jeremiah Will Brigham), New Hampshire (Kathy Capron), New Jersey (Beatrice Friedman, Maritza Galindo, Kevin Kelly), New Mexico (Melissa Mendoza), New York (Sarah Ecton, Sally Hall, Lisette Kra, Harmony Stidham), North Carolina (Stacey Caskey, Linda Cole), Ohio (Kristina Centers, Sharon Hopkins, Janet Imfeld), Oklahoma (Cheryl McMurray), Oregon (Molly McDowell Dunston, Catherine Teegarden), Pennsylvania (Michelle Black, Robert Neve, Cheri Rusinack), Rhode Island (Claudia

the Consolidated Class Action Complaint. § I.30. The Agreement and Exhibit 1 thereto also specifically define the "Hill's Products" and exclude any cat foods, dry dog food products, treats, Ideal Balance products, Healthy Advantage products, or other products produced by Hill's that are not specifically listed in Exhibit 1. § I.12. The Parties further agree that the Court should designate the named Class Representatives in the Consolidated Class Action Complaint as representatives for the Settlement Class. § VII.61.

### A.    The Settlement Provides Substantial Monetary Relief for the Settlement Class

To resolve the claims of the Settlement Class, Defendants have agreed to pay, and on March 12, 2021, they paid, $12.5 million into the Settlement Fund. §§ I.21, I.33, II.40; Decl. Schwartz ¶ 10. As long as the Settlement becomes final, no portion of the Settlement Fund will revert to Defendants. §§ I.8, II.41, IV.49, IV.52, VIII.66–68.

The Settlement Agreement contains a Plan of Allocation. Under the Agreement, Settlement Class Members may seek payment of Dog Injury Claims[5] and/or Consumer Food Purchase Claims.[6] § IV.48. A Settlement Class Member may, but is not required to, submit both a Dog

---

Hoyos), South Carolina (Melinda Hengel), Tennessee (Jeffrey Morris), Texas (Leiann Hawley, Stephanie Lett), Utah (Susan Pyper), Vermont (Toni Blanchard), Virginia (Demetrios Tsiptsis), Washington (Teresa Krage and Kay Okahashi), West Virginia (Crystal Russell), Wisconsin (Luann Tyborski), and Wyoming (Mary Ponce). Consolidated Compl. ¶¶ 128-74.

[5] "Dog Injury Claims" means claims seeking damages allegedly incurred by Settlement Class Members whose dogs consumed any Hill's Products and where the Settlement Class Member incurred any economic loss related to their dog's ingestion of excess levels of vitamin D through the consumption of the Hill's Products, specifically excluding any amounts that Hill's has already paid to the Settlement Class Member or on his or her behalf as part of a Hill's Claims Process. § I.7.

[6] "Consumer Food Purchase Claims" means claims solely for reimbursement of the costs associated with the purchase of Hill's Products by Settlement Class Members who have not been reimbursed for such costs to date, including through return or exchange of the Hill's Products. Any Consumer Food Purchase Claim will specifically exclude any amounts that Hill's has already paid to the Settlement Class Members or on their behalf as part of a Hill's Claims Process or amounts paid to Settlement Class Members by retailers following the recall. § I.3.

Injury Claim and a Consumer Food Purchase Claim. *Id.* Submission of a valid, timely Claim Form will entitle a Settlement Class Member to a cash payment as set forth in the Settlement Agreement. § IV.49.a–b.

Settlement Class Members can submit a Consumer Food Purchase Claim with or without Proof of Purchase. If there is Proof of Purchase, the Settlement Class Member shall receive the full price of the Hill's Products as set forth in the Proof of Purchase. If there is not Proof of Purchase, the Class Member shall receive the MSRP for the Hill's Products claimed to have been purchased for up to a total value of $20. § IV.49.b. For Dog Injury Claims, Class Members shall be reimbursed for expenses related to the screening or treatment of their dogs for symptoms consistent with the consumption of excess vitamin D. The Settlement requires that Class Members submit documentation regarding these claims. § IV.49.a.

All payments of Settlement compensation to Settlement Class Members shall be made from the Settlement Fund after all costs of Settlement administration (including, but not limited to: costs related to Class Notice; the fees and expenses of the Settlement Administrator, as approved by the Court; the Fee and Expense Award; and the Service Award Payments, as approved by the Court), are deducted from the Settlement Fund. § IV.50. If the total of the timely, valid, and approved Claims submitted exceeds the available relief minus any covered costs and expenses, each eligible Settlement Class Member's award shall be reduced on a *pro rata* basis. *Id.* If the total of the timely, valid and approved Claims is less than the available relief, minus any covered costs and expenses, each eligible Settlement Class Member's award shall be *pro rata* increased up to two-times the value of the timely, valid, and approved Claim absent any further written agreement by the Parties. *Id.* Settlement Class Counsel may make an application to the Court to seek approval for proposed additional distributions of the Unpaid Funds to Settlement Class Members if such distributions are

economically feasible and will not exceed more than two-times the value of the timely, valid, and approved Claim, absent any further written agreement by the Parties. *Id.* In the event that residual funds remain after such distribution(s), Settlement Class Counsel may request that remaining residual Unpaid Funds, if any, shall be paid to the Cy Pres Recipient, *id.*, which is Unleashed Pet Rescue, § I.5. Unleashed Pet Rescue does extraordinary work in the community on behalf of dogs. Decl. Schwartz ¶¶ 38-39.

Settlement Class Counsel believe $12.5 million will completely satisfy the anticipated claims, without the need to reduce any claims *pro rata*, based on: Settlement Class Counsel's examination of Hill's Product sales information; Settlement Class Counsel's review of information regarding Hill's reimbursement program and sales; Settlement Class Counsel's extensive experience with class action settlements involving consumer products generally, and dog food in particular; and Settlement Class Counsel's communications with hundreds of Settlement Class Members, including the 71 Class Representatives named in the Consolidated Complaint. Decl. Schwartz ¶¶ 9, 37.

The Settlement contains a narrowly tailored release co-extensive with the legal and factual claims in this case for Settlement Class Members who do not opt out. The Settlement Agreement specifically excludes from the definition of Released Claims and from the Settlement "any and all claims involving Hill's cat foods, Hill's dry dog foods, Hill's treats, Hill's Ideal Balance products, and Hill's Healthy Advantage products not listed in Exhibit 1" and "any and all claims asserted in the complaint captioned *Eichhorn-Burkhard v. Hill's Pet Nutrition, Inc.*, No. 19-2672-JAR-TJJ (D. Kan.), which purports to assert class claims on behalf of a proposed European Union Class and a proposed German Sub-Class." §§ I.23, IX.69–71. The release is mutual, as Defendants will release the Class Representatives from any and all claims that relate to prosecution of the Action,

the Settlement Agreement, or the Settlement claims process (provided, however, that the release does not include claims by the Parties to enforce the terms of the Settlement). § IX.72.

Each Settlement Class Member has the opportunity to object to or opt out of the Settlement. §§ III.47, V.54. Settlement Class Members who do not properly and timely submit Requests for Exclusion will be deemed to have waived all rights to opt out and will remain in the Settlement Class. §§ I.20, I.30, VII.62.f.

### B.    Service Awards to the Class Representatives

In accordance with the Agreement and the Preliminary Approval Order, Settlement Class Counsel are filing concurrently herewith a motion seeking service award payments of $500 per Class Representative for only the Class Representatives named in the Consolidated Class Action Complaint, to be paid from the Settlement Fund. § I.2, X.73; Prelim. Approval Order ¶ 33.

### C.    Attorneys' Fees and Litigation Costs and Expenses

In accordance with the Agreement and the Preliminary Approval Order, Settlement Class Counsel are filing concurrently herewith a motion for an award of attorneys' fees seeking 32 percent of the Settlement Fund, as well as reimbursement of litigation costs of up to $35,946.64, to be paid from the Settlement Fund. § XI.76; Prelim. Approval Order ¶ 33.

### III.    PRELIMINARY APPROVAL

At the February 2, 20121 preliminary approval hearing, the Court granted preliminary approval and made specific findings in support of preliminary approval orally on the record. Tr. Settlement Approval Hr'g, ECF No. 110 at 29-38.

While no one filed an objection to the preliminary approval motion, the Court did allow non-lead counsel to speak at the hearing and ultimately ordered a small addition to Section V of the Claim Form, *see id.* at 24-25 (requesting that Section V state "Have you, or to your knowledge

your veterinarian on your behalf . . ."); *see generally id.* at 15-25, which was incorporated into the Claim Form, Decl. Schwartz ¶ 43. The Court entered the Preliminary Approval Order on February 3, 2021, which approved the Notice Plan. Prelim. Approval Order, ECF No. 105.

On March 16, 2021, Defendants wire transferred $12,500,000 in cash into the Settlement Fund pursuant to the Settlement Agreement. Decl. Schwartz ¶ 45; § II.40.

## IV.   NOTICE AND CLAIM PROCESS

Plaintiffs proposed a vigorous Notice Plan, ECF No. 98-5 (Notice Plan), which the Court ultimately approved. ECF No. 105 at ¶¶ 8-11. As detailed in the accompanying Declaration of Jeanne Finegan ("Decl. Finegan"), between March 8, 2021, and May 6, 2021, the Settlement Administrator disseminated the Notice through the combination of the following methods.

The Long Form Notice was directly emailed to 11,912 Settlement Class Members and State Subclass members for whom an email address could reasonably be identified and directly mailed via U.S. mail to 14,594 Settlement Class Members and State Subclass members for whom only a physical address is known. Decl. Finegan, ¶ 14. The Long Form Notice, which is available on the Settlement Website, fully explains the Plan of Allocation and distribution of the Settlement Fund. §§ I.35, III.47.

Starting on December 5, 2020, the Settlement Administrator obtained a toll-free telephone number, which Settlement Class Members and State Subclass members can call 24 hours per day, 7 days per week, for more information about the Settlement, including but not limited to requesting copies of the Long Form Notice. Over 700 class members have called the number. Decl. Finegan, ¶¶ 11-12.

On March 18, 2021, the Settlement Administrator issued a press release, which was distributed via PR Newswire's US1 distribution, and it reached 102 print and online media outlets.

Decl. Finegan, ¶ 21.

On March 1, 2021, the Settlement Website, www.petfoodsettlement.com, went live. Notices; the Original Complaint; the First Amended Complaint; the Settlement Agreement; the Preliminary Approval Order; the Long Form Notice; the Short Form Notice; and the Claim Form are posted. Settlement Class Members and State Subclass members can use the website to electronically file their Claim Forms. Decl. Finegan, ¶ 10.

Two print notices (short form notices) were published. On April 1, 2021, the short form notice was published in the *Journal of the American Veterinary Medical Association*, a trade publication directed at veterinarians. On March 30, 2021, the short form notice was published in *National Geographic*. Decl. Finegan, ¶ 15.

The Settlement Administrator has digitally advertised notices, which included (a) online display banner advertising specifically targeted to reach Settlement Class Members and State Subclass members, (b) keyword search targeting Settlement Class Members and State Subclass members, and (c) social media through Facebook and Instagram. Approximately 148 million such ads have been displayed. Decl. Finegan, ¶¶ 17-19.

After approval by the Court, a supplemental notice program was commenced on May 25, 2021, and will run through June 28, 2021. The supplemental program consists of display ads, keyword search advertising and social media ads on Facebook and Instagram. These media channels were chosen based on high engagement during the initial notice program. Decl. Finegan, ¶ 23.

In the opinion of Kroll, the outreach efforts described above reflected a particularly appropriate, highly targeted, and contemporary way to employ notice to this class. Through a multi-media channel approach to notice, which employed print, online display, search, social

media, and a press release, an estimated 80 percent of targeted Class Members were reached by

the initial media program, on average, 2.4 times. The supplemental program is expected to further

increase these estimates. Decl. Finegan, ¶ 27.

## ARGUMENT AND AUTHORITIES

### I.   The Settlement Warrants Final Approval

It is well established in the Tenth Circuit and throughout the country that the settlement of

a complex class action, such as this, is both favored and encouraged. *In re Thornburg Mortg., Inc.*

*Secs. Litig.*, 912 F. Supp. 2d 1178, 1227 (D.N.M. 2012) ("*Thornburg*"); *accord Wal-Mart Stores,*

*Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("We are mindful of the 'strong judicial

policy in favor of settlements, particularly in the class action context.'"); *In re Warfarin Sodium*

*Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in

settling class action litigation, and it should therefore be encouraged."); *Isby v. Bayh*, 75 F.3d 1191,

1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation.").

Because of this, in exercising their sound discretion to approve a settlement, courts are mindful

"not to decide the merits of the case or resolve unsettled legal questions." *Shaw v. Interthinx, Inc.*,

No. 13-cv-01229-REB-NYW, 2015 WL 1867861, at *2 (D. Colo. Apr. 22, 2015); *accord Diaz v.*

*Romer*, 801 F. Supp. 405, 407 (D. Colo. 1992) ("[A] settlement hearing is not a substitute for a

trial; the Court's role is much more limited.").

Under the recently amended Federal Rule of Civil Procedure 23(e)(2), if a proposed

settlement "would bind class members, the court may approve it only after a hearing and only on

finding that it is fair, reasonable, and adequate after considering whether":

> (A) the class representatives and class counsel have adequately represented the
> class;
>
> (B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2)(A)-(D). These facts are "not meant to displace any circuit's unique factors, but rather focus courts on the core concerns in deciding whether to approve a proposed settlement." *Chavez Rodriguez v. Hermes Landscaping, Inc.*, No. 17-cv-02142-JWB-KGG, 2020 WL 3288059, at *2 (D. Kan. June 18, 2020) (citing FED. R. CIV. P. 23 advisory committee's note to 2018 amendment).

Courts in the Tenth Circuit traditionally have determined whether a proposed settlement is fair, reasonable, and adequate by considering:

(1) whether the proposed settlement was fairly and honestly negotiated;

(2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

(3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002) ("*Rutter*"), *abrogated on other grounds by Devlin v. Scardelletti*, 536 U.S. 1 (2002); *accord Ogden v. Figgins*, No. 2:16-cv-02268-JAR, 2017 WL 5068906, at *2 (D. Kan. Nov. 3, 2017) (Robinson, J.). "The Tenth Circuit's additional factors largely overlap, with only the fourth factor not being subsumed

into the new Rule 23." *Chavez Rodriguez*, 2020 WL 3288059, at *2.

The Court preliminarily determined the proposed Settlement meets these standards and is fair, reasonable, and adequate. Prelim. Approval Order ¶ 6; Tr. Settlement Approval Hr'g 29-35. As discussed below, the Court's initial disposition was correct, as the Settlement easily satisfies each of the Rule 23(e)(2) and Tenth Circuit factors to support final approval. Furthermore, the proposed Plan of Allocation is also fair, reasonable, and adequate.

### A.     The Class Representatives and Settlement Class Counsel Have Adequately Represented the Settlement Class

To determine if the Settlement Class is adequately represented under Rule 23(e)(2)(A), courts have utilized the standard for evaluating adequacy under Rule 23(a)(4) for class certification purposes. *Chavez Rodriguez*, 2020 WL 3288059, at *2. Plaintiffs address adequacy under Rule 23(a)(4) below and therefore do not repeat their arguments here. *See infra* Arg. II.A.4.

### B.     The Settlement Was Fairly, Honestly, and Extensively Negotiated at Arm's Length and With an Experienced Mediator

The second factor under Rule 23(e)(2)(B) overlaps with the first *Rutter* factor, which assesses whether "the settlement was fairly and honestly negotiated." *See In re Syngenta AG MIR162 Corn Litig.*, 357 F. Supp. 3d 1094, 1102 (D. Kan. 2018). Indicia that a settlement was fairly and honestly negotiated include that the parties engaged a neutral mediator and the negotiations were extensive. *Chavez Rodriguez*, 2020 WL 3288059, at *3 (determining that a settlement "negotiated through a formal mediation" with an experienced mediator supported the conclusion that the settlement was "a product of an arm's length negotiation"); *XPO Logistics, Inc. v. Leeway Glob. Logistics, LLC*, No. 2:15-cv-00703-CW, 2018 WL 400769, at *4 (D. Utah Jan. 12, 2018) (approving settlement as "fair and equitable to both parties concerned," where it was "fairly and honestly negotiated over a long period of time with the assistance of competent counsel

on both sides and an outside mediator").

Here, the Parties achieved the Settlement as a result of extensive, arm's length negotiations with the aid of Judge Andersen, an experienced, neutral, third-party mediator. Decl. Schwartz, ¶ 8. The mediation sessions involved multiple rounds of thorough, pre-mediation briefing regarding the strengths and weaknesses of Plaintiffs' claims and discussions regarding the parties' respective claims and defenses. *Id.* at ¶ 9. The Parties were unable to reach a compromise at either of the two day-long, in-person mediation sessions they participated in with Judge Andersen. *Id.* at ¶¶ 29-32. Settlement was subsequently reached only after the Parties had engaged in extensive continued arm's length settlement discussions with Judge Andersen during the months after the second session and Judge Andersen had made a mediator's proposal containing some but not all of the material terms of the settlement. *Id.* at ¶¶ 32-35. Ultimately, the Parties' settlement discussions resulted in the fully executed Settlement Agreement on December 15, 2020. *Id.* at ¶ 36. This mediation process shows the Settlement was negotiated absent any collusion between the Parties.[7]

Likewise, a strong presumption of fairness attaches to a class action settlement reached through arm's-length negotiations among able and well-versed counsel. *Ogden*, 2017 WL 5068906, at *3 ("When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable."); *see Horton v. Molina Healthcare, Inc.*, No. 17-cv-00266-CVE-JFJ, 2019 WL 2207676, at *1 (N.D. Okla. May 22, 2019) (finding proposed class action settlement fair, reasonable, and adequate

---

[7] *See Shapiro v. All. MMA, Inc.*, No. 17-cv-02583-RBK-AMD, 2018 WL 3158812, at *2 (D.N.J. June 28, 2018) ("The participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties."); *Farley v. Fam. Dollar Stores, Inc.*, No. 12-cv-00325-RM-MJW, 2014 WL 5488897, at *2 (D. Colo. Oct. 30, 2014) (holding first *Rutter* factor was satisfied where counsel were experienced attorneys who conducted negotiations with assistance of "knowledgeable and qualified" mediator).

because, *inter alia*, it was "negotiated in good faith at arms' length between experienced attorneys familiar with the legal and factual issues of this case aided by an experienced and neutral third-party mediator").

The $12.5 million to be paid by Defendants speaks for itself as to the competence and vigor of Plaintiffs' representation in the case and at the bargaining table. This is an excellent result given the uncertainties of litigation and risks to the Settlement Class described below. In sum, the Parties' engagement of the assistance of an experienced, neutral mediator, the history of the Parties' negotiations, and the Settlement's terms demonstrate beyond genuine dispute that the Settlement was fairly, honestly, and vigorously negotiated. As such, the requirements of Rule 23(e)(2)(B) and the first *Rutter* factor are met.

### C. The Relief That the Settlement Agreement Provides for the Settlement Class Is Adequate

#### 1. The Costs, Risks, and Delay of Trial and Appeal

Rule 23(e)(2)(C)(i) instructs courts to consider the adequacy of the settlement relief in light of "the costs, risks, and delay of trial and appeal." This factor overlaps with the combined second and third *Rutter* factors, i.e., "whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt," and "whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation." *Rutter*, 314 F.3d at 1188; *see Chavez Rodriguez*, 2020 WL 3288059, at *3. Taken together, these factors weigh heavily in support of final approval of the Settlement.

### a.    Serious Legal and Factual Questions Place the Litigation's Outcome in Doubt

If the Action were to continue, serious questions of law and fact would place the outcome in significant doubt. Decl. Schwartz, ¶ 49. In continued litigation, Plaintiffs would be confronted with the significant risks presented by motions to dismiss and/or for judgment on the pleadings, class certification, expert discovery, summary judgment, trial, and appeal. *See In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1261 (D. Kan. 2006) ("[E]ven if plaintiffs could have survived defendants' motions for summary judgment, additional serious questions of law and fact also would have placed in doubt the value of the recovery plaintiffs might have been able to obtain."). Expensive and protracted litigation would proceed with no guaranteed or inevitable favorable outcome for either Plaintiffs or Defendants. *In re Dep't of Energy Stripper Well Exemption Litig.*, 653 F. Supp. 108, 117 (D. Kan. 1986). The risk that the finder of fact, the Court, and/or an appellate court might rule against Plaintiffs on a dispositive issue cannot be ignored and is not easily quantified.

Defendants likely would have strenuously argued they face no liability. Decl. Schwartz, ¶ 50. Defendants likely would raise, for example, causality issues regarding whether the Hill's Products actually caused any alleged injuries to dogs, in general, and the dogs belonging to each of the Class Representatives, in particular. *Id.* Plaintiffs would face additional risk in establishing damages. *Id.* at ¶ 51. Defendants likely would take issue with both Plaintiffs' theory of and means of proving damages. *Id.*

"In class actions, the 'complexities of calculating damages increase geometrically.'" *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992). Defendants would dispute the availability of any "price premium" damages for purchases of Hill's Products and that any compensation is available under any legal theory where dogs consumed affected food

and experienced no ill effects. Decl. Schwartz, ¶ 51. Ultimately, damages issues would come down to an unpredictable and hotly disputed "battle of the experts," *see Thornburg*, 912 F. Supp. 2d at 1242, and Plaintiffs' claims would be susceptible to the risks involved in relying on expert witness testimony, including *Daubert* challenges. Decl. Schwartz, ¶ 52. Plaintiffs' case would become much more difficult to prove if the Court were to determine that even one of Plaintiffs' experts should be excluded from testifying at trial. *Id.* at ¶ 53. As a result, "[t]he suggestion that the Court should force an experienced, seasoned Plaintiffs' class counsel to take the case to trial should not be made lightly, for victory is not assured or even likely except in the very best of cases." *Thornburg*, 912 F. Supp. 2d at 1242.

Plaintiffs also would face the ongoing risks associated with class certification. Decl. Schwartz, ¶ 54. In opposing class certification, Defendants would likely argue Plaintiffs could not prove damages on a class-wide basis. *Id.*; *see, e.g.*, *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). Resolving this argument would necessarily involve expert testimony. Decl. Schwartz, ¶ 54. Even if Plaintiffs were to prevail in certifying the class and proposed subclasses, Defendants could still have moved to decertify the class or trim the class period before trial, on appeal, or at any stage of the action. *See Christine Asia Co. v. Yun Ma*, No. 1:15-md-02631-CM-SDA, 2019 WL 5257534, at *13 (S.D.N.Y. Oct. 16, 2019) (finding that the risk of maintaining class status weighed in favor of final approval because "a class certification order may be altered or amended any time before a decision on the merits"); FED. R. CIV. P. 23(c) (authorizing a court to decertify a class at any time).

For all these reasons, considering the complex legal and factual issues associated with continued litigation, there is an undeniable and substantial risk that, after years of continued litigation and additional delays, the Settlement Class could have received an amount significantly less than the Settlement Fund, or nothing at all.

> **b.     The Recovery Is Particularly Significant in Light of the Delays Further Litigation Would Entail**

The $12,500,000 relief offered by the proposed Settlement is substantial. And there is significant additional value inherent in immediacy. *See Thornburg*, 912 F. Supp. 2d at 1244 ("To most people, a dollar today is worth a great deal more than a dollar ten years from now."). This is particularly so where the size of any potential recovery would be reduced by additional costs incurred by Settlement Class Counsel in taking this case through trial and likely appeals. *See Chavez Rodriguez*, 2020 WL 3288059, at *3 (observing that "the costs and time of moving forward in litigation would be substantial").

Indeed, absent Settlement, there would likely be many more years of litigation ahead. Decl. Schwartz, ¶ 56. The Parties and the Court would expend significant time, resources, and costs to litigate the case, which could include: (i) motions to dismiss and/or motions for judgment on the pleadings; (ii) contested class certification proceedings and possible interlocutory appeals of any class determination; (iii) costly and burdensome nationwide discovery, which would entail numerous depositions, interrogatories, and requests for admission, as well as voluminous document production; (iv) costly merits and class expert reports and discovery; (v) summary judgment motions; and (vi) trial. *Id.* at ¶ 57. Defendants could appeal any verdict eventually obtained, which could take years to resolve and would expend significant judicial and Party resources. *See, e.g.*, *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 694 (D. Colo. 2006) ("If this case were to be litigated, in all probability it would be many years before it was resolved."). Without settlement, the case would "likely drag on for years, require the expenditure of millions of dollars, all the while class members would receive nothing." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir. 2005).

Courts routinely recognize the value of an immediate recovery in the face of delays and uncertainty. *E.g.*, *Swartz v. D-J Eng'g, Inc.*, No. 12-cv-01029-DDC-KGG, 2016 WL 633872, at *5 (D. Kan. Feb. 17, 2016) ("[T]he value of immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation."); *McNeely v. Nat'l Mobile Health Care, LLC*, No. 07-cv-00933-M, 2008 WL 4816510, at *13 (W.D. Okla. Oct. 27, 2008) ("The class . . . is better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted."); *In re King Res. Co. Secs. Litig.*, 420 F. Supp. 610, 625 (D. Colo. 1976) ("In this respect, 'It has been held proper "to take the bird in the hand instead of a prospective flock in the bush."'").

Considering the hurdles associated with continued litigation, the immediate, substantial relief offered by the $12,500,000 Settlement greatly outweighs the "mere possibility of a more favorable outcome after protracted and expensive litigation over many years in the future." *In re Syngenta AG MIR162 Corn Litig.*, 357 F. Supp. 3d at 1103.

For all of the reasons given above, Plaintiffs respectfully submit that consideration of the costs, risks, and delay of trial and appeal strongly weighs in favor of the Settlement.

### 2.     The Proposed Method for Distributing Relief Is Effective

As shown below and discussed in more detail in the accompanying Declaration of Jeanne Finegan, APR, Concerning Implementation of Class Notice, the method and effectiveness of the notice and claims administration process are "effective" pursuant to Rule 23(e)(2)(C)(ii). As described below, *see infra* Arg. § III, Settlement Class Counsel and the Settlement Administrator provided the best notice practicable under the circumstances in accordance with the Court's Preliminary Approval Order and the requirements of Rule 23 and due process.

Furthermore, as described below, *see infra* Arg. § I.F, the proposed Plan of Allocation is designed to fairly and rationally allocate the proceeds of this Settlement to the Settlement Class in a cost-effective manner. The Notice and claims processes are similar to those commonly used in consumer class action settlements and provide for straightforward cash payments based on information provided by the Settlement Class Members. *See infra* Arg. §§ I.F, III; *see also* Decl. Schwartz, ¶¶ 60-61. Of particular note to date, no one has filed any objections to the Plan of Allocation, whether at the time of preliminary approval or since. Decl. Schwartz, ¶ 63. Thus, Plaintiffs submit that they have demonstrated a thorough and effective method of distributing relief, further supporting final approval.

### 3.    The Terms of the Proposed Award of Attorney's Fees and Expenses

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." As discussed in the concurrently filed motion for an award of attorneys' fees and litigation costs and expenses ("Fee Application"), Settlement Class Counsel seek an award of attorneys' fees in the amount of 32% of the Settlement Fund, and expenses of $35,964.64. As further discussed in the Fee Application, this request is in line with and below recent fee awards in this District. *E.g.*, *Nakamura v. Wells Fargo Bank, N.A.*, No. 17-4029-DDC-GEB, 2019 WL 2185081, at *1 (D. Kan. May 21, 2019) (awarding attorneys' fees of 33% of the gross settlement fund); *In re Universal Serv. Fund Tel. Billing Practices Litig.*, No. 02-MD-1468-JWL, 2011 WL 1808038, at *2 (D. Kan. May 12, 2011) (finding a fee of one-third of the total amount of the settlement fund to be "a reasonable and appropriate fee"). This amount is also below the amount specified in the Notice.

Furthermore, this is an all-cash, non-reversionary settlement and the entire Net Settlement Fund will be distributed to Settlement Class Members or the Cy Pres Recipient. *See* §§ II.40-41, IV.50, IV.52, IV.53. As such, there is no risk that Settlement Class Counsel will be paid but Settlement Class Members will not. *Cf. Eubank v. Pella Corp.*, 753 F.3d 718, 726-27 (7th Cir. 2014) (rejecting settlement where attorneys would receive fees based on inflated settlement value, as defendants were likely to pay only a fraction of the purported settlement value to the class).

For all these reasons, the terms of the proposed award of attorneys' fees and expenses weigh in favor of final approval of the Settlement.

### 4. The Parties Have No Additional Agreement Other Than an Agreement to Address Requests for Exclusion

Rule 23(e)(2)(C)(iv) requires the consideration of any agreement required to be disclosed under Rule 23(e)(3). As disclosed in moving for preliminary approval, the Parties have entered into a standard supplemental agreement, which provides solely that in the event a specified number of Settlement Class Members with valid, timely claims validly request exclusion from the Settlement Class, Defendants shall have the option to terminate the Settlement. § VIII.67. Concurrently with the filing of the motion for preliminary approval, the Parties submitted the supplemental agreement and sought permission to file it under seal, *see* Joint Mot. for Leave to File Under Seal, ECF No. 99, and the Court allowed the sealed filing on February 3, 2021. Order, Feb. 3, 2021, ECF No. 106.

### D. The Settlement Treats Settlement Class Members Equitably

Rule 23(e)(2)(D) considers whether the Settlement treats Settlement Class Members equitably. As discussed further below, *see infra* Arg. § I.F, all Settlement Class Members are treated equitably under the terms of the Settlement Agreement, including the Plan of Allocation set forth in the Notice. In short, the Plan of Allocation provides that each Settlement Class Member

that properly submits a Valid Claim Form will receive their *pro rata* share of the Net Settlement Fund. *See infra* Arg. § I.F. And all Class Representatives will be subject to the same formula for distribution of the Net Settlement Fund as every other Settlement Class Member in the same claim category (whether Dog Injury Claims or Consumer Food Purchase Claims). This factor therefore supports granting final approval of the Settlement.

### E.    The Judgment of the Settling Parties

The final, additional factor Tenth Circuit courts consider is whether the parties view the settlement as fair and reasonable. *Nieberding v. Barrette Outdoor Living, Inc.*, 129 F. Supp. 3d 1236, 1246 (D. Kan. 2015). Settlement Class Counsel strongly endorse the Settlement as fair and reasonable and believe it is in the best interests of the Settlement Class. Decl. Schwartz, ¶ 58. As reflected by Settlement Class Counsel's signatures to the Settlement Agreement and in their judgment, the Settlement is fair and reasonable—indeed, it represents an outstanding result for the Class. Decl. Schwartz, ¶¶ 58-59. This judgment is based not only on the calculus of risk in engaging in further motion practice, trials, and appeals, but also the sizable monetary recovery that the Settlement delivers now with certainty. *Id.* at ¶ 59. As a result, this factor weighs heavily in favor of final approval. *O'Dowd v. Anthem, Inc.*, No. 14-cv-02787-KLM-NYW, 2019 WL 4279123, at *14 (D. Colo. Sept. 9, 2019) (recognizing that "the recommendation of a settlement by experienced plaintiff[s'] counsel is entitled to great weight"); *Hapka v. CareCentrix, Inc.*, No. 2:16-cv-02372-KGG, 2018 WL 1871449, at *5 (D. Kan. Feb. 15, 2018) ("Counsels' judgment as to the fairness of the agreement is entitled to considerable weight."); *Williams v. Sprint/United Mgmt. Co.*, No. 03-cv-02200-JWL, 2007 WL 2694029, at *4 (D. Kan. Sept. 11, 2007) ("[T]he endorsement of the parties' counsel is entitled to significant weight.").

### F.     The Proposed Plan of Allocation Is Fair, Reasonable, and Adequate

The proposed Plan of Allocation, set forth in the Notice, details how the Net Settlement Fund is to be allocated among eligible Settlement Class Members. *See* §§ IV.49–53. The standard for approval of a plan of allocation is the same as the standard for approving a settlement: whether it is "fair, reasonable, and adequate." *See Lucas*, 234 F.R.D. at 695. In making this determination, courts give great weight to the recommendation of experienced counsel. *In re Charter Commc'ns, Inc., Sec. Litig.*, No. 4:02-cv-01186-CAS, 2005 WL 4045741, at *10 (E.D. Mo. June 30, 2005) ("A plan of allocation 'need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" class counsel.'").

Plans of allocation that vary payouts based on the strength of claims have been repeatedly approved in the class action context. *See, e.g.*, *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008) ("It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits."); *In re Heritage Bond Litig.*, No. 02-ML-1475-DT, 2005 WL 1594403, at *11 (C.D. Cal. June 10, 2005) ("[A] plan of allocation . . . fairly treats class members by awarding a pro rata share to every Authorized Claimant, [even as it] sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.").

As Plaintiffs set out above, the Plan of Allocation seeks to distribute the Settlement proceeds equitably to Settlement Class Members who have suffered an economic loss as a result of Defendants' alleged wrongdoing, and it is consistent with Plaintiffs' allegations. Decl. Schwartz, ¶ 60. The Plan of Allocation additionally distributes Settlement proceeds for dog injury and death claims based on the Settlement Class Member's evidence of having suffered damages.

Calculation of a valid Dog Injury Claim will depend on, among other things, documentation submitted by the Settlement Class Member and the investigation and evaluation of the Settlement Administrator, potentially with the aid of a veterinarian or other expert. *See* §§ IV.49-50; Decl. Schwartz, ¶ 61. Dog Injury Claims below $500 per dog will be resolved by the Settlement Administrator in its discretion, in consultation with Settlement Class Counsel, while Dog Injury Claims above $500 per dog require the recommendation of the Settlement Administrator and approval of Settlement Class Counsel. *See* § IV.49; Decl. Schwartz, ¶ 61. Consumer Food Purchase Claims with valid Proof of Purchase will receive the full purchase price, and Consumer Food Purchase Claims without Proof of Purchase will receive the MSRP for the Hill's Products claimed to have been purchased for up to a total value of $20. *Id.* Depending upon the total value of all claims submitted, all claims will be pro rata adjusted down or pro rata adjusted up to two-times their value. § IV.50; Decl. Schwartz, ¶ 62. Settlement Class Counsel submit that this method of distributing settlement funds is fair, reasonable, and adequate and warrants this Court's approval. *See Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *2 (N.D. Cal. Dec. 18, 2018) (approving *pro rata* plan of allocation).

## II.    The Court Should Confirm Certification of the Settlement Class and the State Subclasses and Confirm the Appointment of Settlement Class Counsel

The benefits of the proposed Settlement can be realized only through final certification of the Settlement Class for settlement purposes pursuant to Rule 23 of the Federal Rules of Civil Procedure. The U.S. Supreme Court has emphatically confirmed the viability of settlement classes. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ("*Amchem*"). Like a litigation class, a settlement class must satisfy each Rule 23(a) requirement and at least one of Rule 23(b)'s provisions. *See id.* at 613-14; *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 299 (3d Cir. 2005) ("[C]ertification of classes for settlement purposes only [is] consistent with [Rule] 23, provided

that the district court engages in a Rule 23(a) and (b) inquiry . . . ."). The sole exception is that, in the case of a settlement class, "a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620 (citation omitted). In *Amchem*, the Supreme Court reiterated the "dominant concern" governing analysis under Rule 23: "whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *Id.* at 621.

Here, the Settlement Class and the State Subclasses satisfy this dominant concern. Indeed, as Plaintiffs set forth in their preliminary approval brief, and as the Court provisionally ordered in the Preliminary Approval Order, the Settlement Class and the State Subclasses satisfy all prerequisites of Rule 23(a) as well as all requirements of Rule 23(b)(3). *See* Prelim. Approval Order ¶ 4; Tr. Settlement Approval Hr'g 35-36. Furthermore, no one challenged the Court's preliminary certification of the Settlement Class or the State Subclasses, and nothing has occurred subsequently to cast doubt on whether the Settlement Class and the State Subclasses meet the applicable requirements of Rule 23. The Court should now finally certify the Settlement Class and the State Subclasses for settlement purposes.

A.     **The Settlement Class and State Subclasses Satisfy Rule 23(a)'s Requirements**

1.     **The Settlement Class and State Subclasses Are Sufficiently Numerous**

Rule 23(a) first requires that a class be sufficiently numerous so as to make joinder of all members impractical. FED. R. CIV. P. 23(a)(1). "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1214 (10th Cir. 2014). There are several "factors that enter into the impracticability issue," which may "includ[e] the nature of the action, the size of the individual claims, and the location of the members of the class or the property that is the

subject matter of the dispute." *Id.* at 1215. "[B]ecause [numerosity] is such a fact-specific inquiry," the Tenth Circuit grants "wide latitude to the district court in making this determination," and the Tenth Circuit will defer to the district court's determination "if the court 'made an appropriate judgment call.'" *Id.* Courts in this District have found a class of as few as 50 sufficient. *Olenhouse v. Commodity Credit Corp.*, 136 F.R.D. 672, 679 (D. Kan. 1991) ("The good faith estimate of at least 50 members adversely affected . . . persuades the court that the proposed class is of sufficient size to be maintained as a class action.").

The Court preliminarily found that the Settlement Class and the State Subclasses were sufficiently numerous. Prelim. Approval Order ¶ 4; Tr. Settlement Approval Hr'g 35. Joinder of all Settlement Class Members is plainly impracticable, and numerosity is easily met.

### 2.    There Are Issues of Fact and Law Common to All Members of the Settlement Class and the State Subclasses

Rule 23(a) also requires questions of fact or law common to the proposed class as a whole. FED. R. CIV. P. 23(a)(2). "The class's 'common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'"" *Colorado Cross Disability Coal.*, 765 F.3d at 1216. "[F]or purposes of Rule 23(a)(2) even a single common question will do . . . ." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (quotation marks and brackets omitted). "'[E]very member of the class need not be in a situation identical to that of the named plaintiff' to meet Rule 23(a)'s commonality" requirement. *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010).

The Court preliminarily found that the Settlement Class and the State Subclasses satisfy the commonality requirement. Prelim. Approval Order ¶ 4; Tr. Settlement Approval Hr'g 35. Commonality is met given that the claims of the Settlement Class and the State Subclasses all

depend on proof that Defendants manufactured and sold the Hill's Products, which contained excessive levels of vitamin D, using deceptive representations as to the safety and quality of the Hill's Products, causing the Settlement Class Members and State Subclass members economic damages. Common questions include: whether Defendants sold Hill's Products that had excessive levels of vitamin D; whether Defendants advertised, represented, or held themselves out as producing or manufacturing Hill's Products that were safe for pets to consume; whether Defendants' marketing of the Hill's Products is likely to deceive a reasonable consumer, *see, e.g.*, *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); whether Defendants expressly warranted the Hill's Products; whether Defendants purported to disclaim any express warranty; whether Defendants purported to disclaim any implied warranty; whether Defendants intended for Plaintiffs and the Settlement Class Members to purchase the Hill's Products; whether Defendants intended or foresaw that Plaintiffs and the Settlement Class Members would feed the Hill's Products to their pets; whether and in what manner Defendants were negligent in manufacturing or processing the Hill's Products; whether using the Hill's Products as intended (to feed pets) resulted in injury or damages to Settlement Class Members; whether the Settlement Class Members suffered direct losses or damages; and whether the Settlement Class Members suffered indirect losses or damages. *See* Consolidated Compl. ¶ 178.

Simply put, with respect to these common questions, "a class-wide proceeding [will] generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc.*, 564 U.S. at 350. Because these issues of law and fact can be resolved through generalized proof, the Rule 23(a)(2) commonality requirement is satisfied within the meaning of *Wal-Mart Stores, Inc.*

3.     **The Class Representatives' Claims Are Typical of the Claims of the Members of the Settlement Class and the State Subclasses**

The third requirement of Rule 23(a) is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). The typicality test "requires a comparison of the claims or defenses of the representative with the claims or defenses of the class." *Taylor v. Safeway Stores, Inc.*, 524 F.2d 263, 270 (10th Cir. 1975), *overruled on other grounds by Ruckelshaus v. Sierra Club*, 463 U.S. 680, 687–88 (1983). "Demonstrating typicality is not an onerous burden . . . ." *Zapata v. IBP, Inc.*, 167 F.R.D. 147, 160 (D. Kan. 1996). Factual variations among class members do not defeat typicality so long as the class representative's claims and those of the absent members are based on the same legal or remedial theory. *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988); *Nieberding v. Barrette Outdoor Living, Inc.*, 302 F.R.D. 600, 610 (D. Kan. 2014) ("The interests and claims of the named plaintiff and class members need not be identical to satisfy typicality . . . ."). Thus, "if the alleged harm suffered by [the class representative] is of the same type as the harm suffered by members of the proposed class, the typicality requirement is met even if the degree of [the class representative's] harm may differ from that of the members of the proposed class." *Smith v. MCI Telecommunications Corp.*, 124 F.R.D. 665, 675 (D. Kan. 1989).

The Court preliminarily found that Plaintiffs' claims are typical of the claims of the Settlement Class and the State Subclasses. Prelim. Approval Order ¶ 4; Tr. Settlement Approval Hr'g 35. Plaintiffs have claims that are typical of the claims of the absent Settlement Class Members and State Subclass members they seek to represent because they arise from the same course of conduct by Defendants and are based on the same legal theories as are the claims of absent members, and Plaintiffs, all Settlement Class Members, and all State Subclass members suffered the same types of economic injury as a result of purchasing and/or consuming the Hill's

Products. *See* Consolidated Compl. ¶¶ 6-76, 126-74, 184-740.

In sum, the Settlement Class and the State Subclasses satisfy the typicality requirement.

### 4.     The Class Representatives and Settlement Class Counsel Are Adequate

The final Rule 23(a) requirement is that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). This element "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625. "Rule 23(a)(4) involves two inquiries: (1) do the named Plaintiffs and their counsel have any conflicts of interest with other class members; and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ogden v. Figgins*, 315 F.R.D. 670, 675 (D. Kan. 2016); *accord Rutter*, 314 F.3d at 1187-88. Under Rule 23(a)(4), "the class representatives' interest must be 'coextensive' with the interest of the class; but this does not mean that the class representatives' 'positions have to be identical' with the positions of the absent class members." *Tennille v. W. Union Co.*, 785 F.3d 422, 430 (10th Cir. 2015). "Rather . . . the representatives and the class members must share common objectives and legal or factual positions . . . ." *Id.* "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Id.*

The Court preliminarily found that the adequacy requirement is fully met, Prelim. Approval Order ¶¶ 4-5; Tr. Settlement Approval Hr'g 31, 35, 36, and the Court should confirm that finding. First, both Settlement Class Counsel and the Class Representatives have no conflicts of interest with the absent Settlement Class Members. Each of the Class Representatives shares the overriding interest of all Settlement Class Members, which is to obtain the largest possible monetary recovery from this case, making them adequate. *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) ("[S]o long as all class members are united in asserting a common right, such

as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes."); *In re Glob. Crossing Secs. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004) (certifying settlement class and finding that "[t]here is no conflict between the class representatives and the other class members," as "[a]ll share the common goal of maximizing recovery").

Furthermore, as described in the factual and procedural background section above, Settlement Class Counsel and the Class Representatives have vigorously prosecuted this action on behalf of the Settlement Class. *See also* Decl. Schwartz, ¶ 64. The Class Representatives have every incentive to vigorously prosecute this litigation because, as discussed in section II.A.3 above, their claims are typical of the claims of the absent Class Members. *E.g.*, *Emig v. Am. Tobacco Co.*, 184 F.R.D. 379, 387 (D. Kan. 1998) ("An overlap exists in the typicality and adequacy of representation requirements because if typicality is not present, the class representatives do not have an incentive to vigorously prosecute class claims."); *Antonson v. Robertson*, 141 F.R.D. 501, 506 (D. Kan. 1991) ("Typicality also insures that the claims of the class representatives resemble the class' claims to an extent that adequate representation can be expected and conflict of interest can be avoided."). Plaintiffs ask the Court to confirm the appointment of each of the Class Representatives as a Class Representative. Decl. Schwartz, ¶ 64.

The adequacy test also focuses on the fitness of proposed counsel for the class. *See Pelt v. Utah*, 539 F.3d 1271, 1288 (10th Cir. 2008) ("Realistically, for purposes of determining adequate representation, the performance of class counsel is intertwined with that of the class representative."); *In re Aluminum Phosphide Antitrust Litig.*, 160 F.R.D. 609, 614 (D. Kan. 1995) ("Adequacy of representation depends upon the qualifications and experience of plaintiffs' counsel . . . ."). Plaintiffs ask the Court to confirm the appointment of Scott A. Kamber of KamberLaw

LLC, Gary E. Mason of Mason Lietz & Klinger LLP, Michael R. Reese of Reese LLP, and Rachel E. Schwartz of Stueve Siegel Hanson LLP as Settlement Class Counsel. Each of these counsel are highly experienced in complex litigation, consumer advocacy, false advertising claims, and class action litigation. Decl. Schwartz, ¶ 65; *see also* ECF No. 98-10 to 98-13 (firm resumes of the four Co-Lead Counsel's law firms). Therefore, Plaintiffs ask the Court to give final approval to their appointment as Settlement Class Counsel. *See United Food & Com. Workers Union v. Chesapeake Energy Corp.*, 281 F.R.D. 641, 654 (W.D. Okla. 2012) ("the experience and competence of the attorney representing the class may inform the court's analysis" of adequacy); *Wakefield v. Monsanto Co.*, 120 F.R.D. 112, 117 (E.D. Mo. 1988) (adequacy component met where plaintiff's attorneys "[showed] that they have considerable 'experience in the field in which the suit [was] brought'"); *see generally* FED. R. CIV. P. 23(g)(1)(A)(i)-(iv).

As evidenced by the highly favorable $12,500,000 Settlement, Settlement Class Counsel and the Class Representatives have strenuously advocated for the best interests of the Settlement Class throughout the case. Consequently, Settlement Class Counsel and the Class Representatives respectfully submit that they have adequately represented the Settlement Class and ask the Court to affirm its findings that they satisfy Rule 23(a)(4), as well as Rule 23(e)(2)(A).

**B.      The Settlement Class and the State Subclasses Satisfy the Predominance and Superiority Requirements of Federal Rule of Civil Procedure 23(b)(3)**

To certify a class under Rule 23(b)(3), in addition to finding all requirements of Rule 23(a) are met, the court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3); *Amchem*, 521 U.S. at 615; *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 914 (10th Cir. 2018). The Court preliminarily found that the Settlement Class and the State Subclasses meet

both of these requirements. *See* Prelim. Approval Order ¶ 4; Tr. Settlement Approval Hr'g 35-36. For the reasons below, the Court should affirm its preliminary certification finding that predominance and superiority are satisfied as to the Settlement Class and all State Subclasses.

### 1.   Common Legal and Factual Questions Predominate

The U.S. Supreme Court has explained the Rule 23(b)(3) predominance inquiry as follows:

> The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." This calls upon courts to give careful scrutiny to the relation between common and individual questions in a case. An individual question is one where "members of a proposed class will need to present evidence that varies from member to member," while a common question is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." The predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members."

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453-54 (2016) (citations omitted). Rule 23(b)(3) requires that common *questions* predominate, but those questions need not be answered in favor of the class on the merits. *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013). So long as at least one common issue predominates, a plaintiff can satisfy Rule 23(b)(3). *Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 789 (10th Cir. 2019). Predominance is readily met in certain cases alleging consumer fraud, such as this one. *Amchem*, 521 U.S. at 625.

Here, the common questions of law and fact identified above, *see supra* § II.A.2, also satisfy the predominance test because they tower over any questions pertaining to individual Settlement Class members, including members of the State Subclasses. The central contention in this case is that Defendants misrepresented material facts regarding the safety and quality of the Hill's Products, which contained excessive levels of vitamin D, causing Settlement Class Members

and State Subclass members to pay a premium price for the Products and leading to illness and death of Settlement Class Members' and State Subclass members' dogs. Furthermore, critical evidence, such as Defendants' representations about the manufacturing processes, quality, ingredients, and effects of the Hill's Products, as well as the recalls of the tainted Products, focuses on Defendants' conduct and will not vary from class member to class member, therefore giving rise to important common, rather than individual, questions. *See Tyson Foods, Inc.*, 577 U.S. at 453-54. Lastly, as Plaintiffs set out in their brief in support of preliminary approval, which the Court referenced at the preliminary approval hearing, *see* Tr. Settlement Approval Hr'g 35-36, "'variations [in state laws] are irrelevant to certification of a settlement class' since a settlement would eliminate the principal burden of establishing the elements of liability under disparate laws." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 303 (3d Cir. 2011) (citation omitted). And settlement also means "the manageability concerns posed by numerous individual questions of reliance disappear." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 241 (2d Cir. 2012).

For all these reasons, the Court should affirm its preliminary finding that common questions predominate with respect to the Settlement Class and the State Subclasses.

## 2.    A Class Action Is the Superior Method to Adjudicate Plaintiffs' Claims

Finally, under Rule 23(b)(3), Plaintiffs also must show that a class action is superior to individual actions, which courts generally evaluate in light of four considerations:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

FED. R. CIV. P. 23(b)(3)(A)-(D). As set forth above, however, manageability of the litigation is not an issue for purposes of certifying a settlement class. *Amchem*, 521 U.S. at 620.

Here, the Court has preliminarily found that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Prelim. Approval Order ¶ 4. The Court should affirm this finding for several reasons. First, the Settlement itself demonstrates the superiority of proceeding on a class-wide basis. Second, where, as here, common issues predominate, class resolution is usually superior to other available methods for the fair and efficient adjudication of the controversy. *See In re Urethane Antitrust Litig.*, 237 F.R.D. 440, 453 (D. Kan. 2006). Third, individual Settlement Class Members' damages, while not insignificant, are dwarfed by the amounts that would be necessary to hire counsel and experts and wage full-throttle litigation against well-financed corporate entities such as Defendants, and thus their claims are "negative value" claims, strongly tipping the balance in favor of the superiority of class treatment. *Kerner v. City & Cty. of Denver*, No. 11-cv-00256-MSK-KMT, 2012 WL 7802744, at *12 (D. Colo. Nov. 30, 2012) ("[O]ne of the most compelling rationales for finding superiority in a class action is the existence of a negative value suit."), *report and recommendation adopted*, No. 11-cv-00256-MSK-KMT, 2013 WL 1222394 (D. Colo. Mar. 25, 2013). Fourth, the consolidation of the various putative class cases before this Court by the JPML weighs in favor of finding that class litigation is the superior approach. Finally, the Settlement Class Members have had, and have (until June 21, 2021), the opportunity to opt out of the Settlement, allowing any Settlement Class Members who are so inclined to pursue individual cases.

In sum, the proposed Settlement Class and State Subclasses warrant certification, and the Court should affirm the appointment of Settlement Class Counsel and the Class Representatives.

III.    **Plaintiffs Have Provided Sufficient Notice to the Settlement Class and the State Subclasses to Satisfy Federal Rule of Civil Procedure 23 and Due Process**

Under Rule 23(e)(1), a district court approving a class action settlement "must direct notice in a reasonable manner to all class members who would be bound by the proposal." FED. R. CIV. P. 23(e)(1)(B); *accord DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 943 (10th Cir. 2005). And because Plaintiffs seek final certification of the Settlement Class under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B). Notice under Rule 23(c)(2) is designed to fulfill the requirements of due process under the U.S. Constitution. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). To satisfy Rule 23 and due process, notice "must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Tennille*, 785 F.3d at 436 (quoting *Eisen*, 417 U.S. at 174); *accord Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Here, as Plaintiffs set forth in their brief in support of preliminary approval, *see* Pls.' Mem. Supp. Unopposed Mot. Prelim. Approval of Settlement at Arg. § III, ECF No. 98, the Court-approved Notice Plan satisfies these standards and amply informs Settlement Class Members of all relevant case and Settlement-related information. *See* Prelim. Approval Order ¶ 11.

A.    **The Distribution and Timing of Notice Satisfy Rule 23 and Due Process**

Plaintiffs fully complied with the Notice Plan the Court approved as "the best notice . . . practicable under the circumstances" and therefore satisfy Rule 23(c)(2)(B) and due process. ECF No. 105 at ¶ 11. Plaintiffs fully effectuated all aspects of the Notice Plan and then continued digital notice past the original end date for this notice. *See supra* Factual Background § IV.

Courts routinely find similar notice programs meet the requirements of due process and

Rule 23. *See, e.g.*, *Perkins v. Linkedin Corp.*, No. 13-cv-04303-LHK, 2016 WL 613255, at *7 (N.D. Cal. Feb. 16, 2016) (approving notice plan that included direct email notice); *In re Scotts EZ Seed Litig.*, No. 12-cv-4727-VB, 2015 WL 5502053, at *1–2 (S.D.N.Y. July 7, 2015) (approving notice plan where direct notice would be provided to a high proportion of individuals in the class, including via email); *In re Crocs, Inc. Secs. Litig.*, 306 F.R.D. 672, 693 (D. Colo. 2014) (approving proposed method of notice, consisting of mailing notice to class members identified through reasonable efforts and through posting a summary notice by press releases issued over leading business-oriented newswires).

Timing of the notice was also sound. Settlement Class Members have 116 days following commencement of the Notice Program and 57 days following completion of the Notice Program to submit claims. Prelim. Approval Order ¶ 33. And Settlement Class Members have 105 days following commencement of the Notice Program and 46 days following completion of the Notice Program to determine whether to object or opt out of the Settlement. *Id.* These periods are longer than those deemed adequate in other class action settlements. *See e.g.*, *Miller v. Republic Nat. Life Ins. Co.*, 559 F.2d 426, 430 (5th Cir. 1977) (four weeks between mailing of notices and settlement hearing was sufficient); *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975) (19 days); *Greenspun v. Bogan*, 492 F.2d 375, 378 (1st Cir. 1974) (four weeks); *United Founders Life Ins. Co. v. Consumers Nat. Life Ins. Co.*, 447 F.2d 647, 652 (7th Cir. 1971) (24 days).

### B.  The Content of the Notice and the Opportunity to Object or Opt Out Satisfy Rule 23 and Due Process

Under Rule 23(c)(2)(B), notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests

exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." And due process is satisfied where class members receive notice, an opportunity to be heard and to participate in the litigation, and an opportunity to object or to opt out of the class. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *accord Tennille*, 785 F.3d at 436.

As set forth in Plaintiffs' brief in support of preliminary approval, the information in the Notice is provided in "plain English," and is presented in a format that is accessible to the reader. The proposed Notice defines the Settlement Class, explains all Settlement Class Member rights, releases, and applicable deadlines, and describes in detail the monetary terms of the Settlement Agreement, including the procedures for allocating and distributing settlement funds among the Settlement Class Members. The Notice plainly indicates the time and place of the Final Approval Hearing and the method for objecting to or opting out of the Settlement. It details the provisions for the proposed payment of attorneys' fees and costs and Service Award Payments to the Class Representatives, and it provides contact information for Settlement Class Counsel. Unquestionably, the Notice was adequate, comprehensive, and timely, and it provides Class Members with sufficient information to make an informed and intelligent decision with respect to whether to participate in the Settlement. Thus, the content of the Notice satisfies the requirements of Rule 23 and due process. *See, e.g.*, *In re Crocs, Inc. Secs. Litig.*, 306 F.R.D. at 693 (approving notice that provided information including the anticipated recovery, reasons for the settlement, the amount of attorneys' fees or costs sought, and a summary of the plan of allocation); *McNeely*, 2008 WL 4816510, at *14 (approving content of notice because it was "drafted in plain, easily understood language, and clearly and concisely describes the nature of the action, contains the class definition, and sets forth the class claims and issues").

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court:

(1)     finally approve the Settlement Agreement pursuant to Federal Rule of Civil Procedure 23(e)(2);

(2)     certify the Settlement Class and the State Subclasses pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) for settlement purposes only;

(3)     appoint the following Plaintiffs as Class Representatives: Michelle Black, Toni Blanchard, Jack Blaser, Jeremiah Will Brigham, Stacey Caskey, Kathy Capron, Megan Carter, Kristina Centers, Linda Cole, Jennifer Cromwell, Kristin DeCroce, Molly McDowell Dunston, Sarah Ecton, Sandra Walker Evans, Jamie Fain, Beatrice Friedman, Maritza Galindo, Lafonda Guyton, Sally Hall, Marc Haughaboo, Leiann Hawley, Keith Heck, Janis Henderson, Melinda Hengel, Jessie Hollister, Sharon Hopkins, Claudia Hoyos, Janet Imfeld, Mary Ippisch, Brandy Jeter, Cara Kaufmann, Allison Kay, Kevin Kelly, Marla King, Kathy Klaassen, TJ Knowland, Lisette Kra, Teresa Krage, Rosemary Lanctot, Janet Laurin, Tammy Lechner, Stephanie Lett, Sandra Lindquist, David Lovell, Dan Marcus, Michael Markiewicz, Marnie McCown, Cheryl McMurray, Melissa Mendoza, Jeffrey Morris, Jennifer Naeve, Robert Neve, Kay Okahashi, Mary Ponce, Robin Prebe, Susan Pyper, Vanessa Roberts, Karen Rohman, Taakena Ross, Cheri Rusinack, Michael Russell, Crystal Russell, Chuck Silveira, Harmony Stidham, Kristal Summers, Catherine Teegarden, Andrew Tilles, Demetrios Tsiptsis, Luann Tyborski, Angela Wickham, and June Yoshinaga;

(4)     confirm, pursuant to Federal Rule of Civil Procedure 23(c)(1)(B) and (g)(1), the appointment of Scott A. Kamber of KamberLaw LLC, Gary E. Mason of Mason Lietz & Klinger LLP, Michael R. Reese of Reese LLP, and Rachel E. Schwartz of Stueve Siegel Hanson LLP as Settlement Class Counsel;

(5)     approve the form and manner of the Notice Plan and claims process; and

(6)     confirm the appointment of Kroll Settlement Administration as Settlement Administrator for the Settlement.

Date: May 28, 2021

Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

By: */s/ Rachel E. Schwartz*
Rachel E. Schwartz, KS Bar # 21782
*schwartz@stuevesiegel.com*
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7125
Facsimile: (816) 714-7101

*Plaintiffs' Co-Lead, Liaison, and Interim Class Counsel*

**MASON LIETZ & KLINGER LLP**
Gary E. Mason
*gmason@masonllp.com*
5101 Wisconsin Avenue Northwest, Suite 305
Washington, District of Columbia 20016
Telephone: (202) 429-2290
Facsimile: (202) 429-2294

*Plaintiffs' Co-Lead and Interim Class Counsel*

**REESE LLP**
Michael Robert Reese
*mreese@reesellp.com*
100 West 93rd Street, 16th floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Plaintiffs' Co-Lead and Interim Class Counsel*

**KAMBERLAW LLC**
Scott A. Kamber
*skamber@kamberlaw.com*
201 Milwaukee Street, Suite 200
Denver, Colorado 80206
Telephone: (303) 222-9008
Facsimile: (212) 202-6364